UNITED STATES of America,
Plaintiff–Appellee,

v.

Kevin S. HOLT, Defendant–Appellant.

No. 97–2419.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1998.

Decided March 11, 1999.

Suzanne M. Garrison (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff–Appellee.

Joseph M. Gibson, Richard H. Parsons (argued), Office of the Public Defender, Peoria, IL, for Defendant–Appellant.

Before MANION, ROVNER, and DIANE P. WOOD, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Kevin Holt and Kent Buckner were indicted for conspiracy to knowingly and intentionally transfer an automatic weapon in violation of 18 U.S.C. §§ 371 & 922(*o*). A jury found Holt guilty of violating 18 U.S.C. § 371, but acquitted Buckner on both charges. Holt was sentenced to imprisonment for thirty-three months, followed by two years of supervised release. Holt now appeals that conviction and sentence.

Because of the conviction, we view the facts in the light most favorable to the government. *United States v. Wilson*, 159 F.3d 280, 283 (7th Cir.1998). Holt was a part-time police officer for the Village of Glassford and owned a gun shop called the Patriot Arms. He often attended gun shows at which he set up a booth for his shop. At one of these gun shows, Kent Buckner offered to sell him an M–14 rifle for approximately $1200. Some testimony indicated that a rifle which operated only as a semi-automatic would only be worth $600 to $700 dollars. The M–14 had a selector switch that allowed the rifle to operate in semi-automatic or fully automatic mode, and Holt and Buckner discussed the automatic capabilities of the weapon. At one point, Holt covered the selector switch with his hand, and stated "I can't let anybody see this." Holt told Buckner that he did not have the cash, but offered some guns in trade. He ultimately traded six guns for the M–14. A government witness testified that the six guns would have sold for $2800 retail when new, and Buckner estimated that they were worth approximately $1000. Buckner gave the M–14 to Holt along with a rifle case labeled M–14. A witness also testified that the M–14 is a fully automatic rifle, and that it is called an M–1A if semi-automatic. After purchasing the M–14 from Buckner, Holt placed it underneath the table at his booth, although he displayed other weapons on top of the table for potential customers to see.

Holt claimed at trial that he was not aware that the rifle was fully automatic, and that he purchased it on behalf of Jimmy Salamanca, who sometimes worked in his gun shop. Salamanca was indicted as well, and was a cooperating witness at Holt's trial. Holt claimed that once he discovered that the M–14 was fully automatic, he told Salamanca to get rid of it. At a subsequent gun show, Salamanca and Holt were again working at the Patriot Arms booth, and Salamanca showed the M–14 to show attendee Dennis Cummings and offered it for sale. Holt was present at the booth during that time, but did not participate in the conversation. Salamanca initially asked $3500 for the M–14. Cummings declined at the time, and after the show he contacted the Bureau of Alcohol, Tobacco and Firearms ("BATF") to report that he had been offered an illegal sale of a machine gun. Cummings had worked as an informant for BATF in 1985 in return for the government dropping some gun charges against him, but the jury did not hear that information. Acting in cooperation with the BATF, Cummings contacted Salamanca regarding the M–14, and at yet another gun show he again viewed the M–14 at the Patriot Arms booth. Cummings eventually purchased the M–14 from Salamanca at a later meeting between them. The jury rejected Holt's contention at trial that he was unaware that the M–14 was fully automatic when he purchased it.

I

Holt first argues that the district court erred in denying his Motion for a New Trial. The basis for his motion is that the government improperly introduced irrelevant character evidence and evidence of prior bad acts. Specifically, Holt challenges the admission of testimony regarding non-payment of child support, allegations of sexual harassment, sale of certain books and pamphlets at his store, and plans to purchase weapons that would soon be banned. No objection was made to any of this testimony, so we review its admission only for plain error. As a result, we will reverse only if "the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Lindsey*, 123 F.3d 978, 985 (7th Cir.1997), *quoting United States v. Ola-*

*no*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

As part of his defense, Holt introduced a number of character witnesses who testified as to his reputation as an honest and law-abiding individual. In cross-examination of those witnesses, the government asked whether they were familiar with allegations that he was behind on child support payments and with allegations of sexual harassment against Holt at his workplace. Those questions were relevant to determine the extent of the witness' familiarity with Holt's reputation and character. In *Michelson v. United States*, 335 U.S. 469, 479, 69 S.Ct. 213, 93 L.Ed. 168 (1948), the Supreme Court declared that

> [t]he price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him. The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue. Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion....

(footnotes omitted). Rule 405 codifies that common law rule, explicitly allowing cross-examination of character witnesses by prior instances of specific conduct. *See* R. 405(b); *see also United States v. Alvarez*, 860 F.2d 801, 826–27 (7th Cir.1988). Therefore, by calling witnesses to testify regarding his reputation as law-abiding, Holt opened the door for the prosecution to examine the witness' familiarity with his reputation. Holt does not now allege that the government lacked a good faith basis for the allegations. In fact, Holt acknowledged that he was in arrearage in his child support payments, and that there were rumors circulating that he was involved in sexual harassment at his workplace. Thus, this is not a case of a prosecutor "merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box." *Michelson*, 335 U.S. at 480, 69 S.Ct. 213. The district court did not err in permitting the questions.

Holt next challenges the admission of testimony regarding plans he made with another individual to purchase semi-automatic weapons that would soon be banned. Once again, Holt did not object to this testimony at trial, but now argues that the testimony was unduly prejudicial because the jury might not understand that it was legal to sell such weapons if they were purchased before the ban went into effect. That testimony was introduced to demonstrate his familiarity with semi-automatic weapons. It was relevant to demonstrate that he was knowledgeable about developments in gun laws and specifically regarding semi-automatic weapons, and to counter his claims of ignorance regarding the capabilities of the M–14 which he purchased. As such, the admission of that testimony did not constitute plain error.

Finally, Holt asserts error in the government's repeated questions regarding books and pamphlets for sale at Patriot Arms. A typical example of such questioning is as follows:

Q. And have you ever been to defendant's gun shop?

A. Yes, I have.

Q. And are you aware that the defendant would sell manuals instructing people how to convert semi–automatic weapons into fully automatic weapons?

A. I'm aware he had books in his store, yes.

Q. Are you aware that there were books on those subjects?

A. Not necessarily those specific subjects, but, yes, I was aware that there were books on a variety of subjects and that I wasn't interested in.

Q. Now, the fact that the defendant is selling manuals instructing people on how to make illegal weapons, that does not alter your opinion as to his character for law abidingness?

A. Not necessarily, no....

Q. Okay. And we've heard some testimony in this trial that the defendant also would sell the anarchist's cookbook which instructs on how to make explosives and so forth. The fact that he would sell such material does not affect your opinion on his law abidingness?

A. No, not at all.

Trial Transcript, 2–24–97, at 145–46. That excerpt and others show that the government sought to introduce the evidence to attack Holt's "law-abidingness," and the government argues that is proper under Rules 404(a) and 405 relating to character evidence. We believe this evidence has no relevance for that or any other purpose. No one has argued that the sale of those materials is unlawful, and the government's attempt to use Holt's exercise of that lawful right as evidence that he is not a law-abiding person is improper. *See People v. Shymanovitz*, 157 F.3d 1154, 1158 (9th Cir.1998) ("The mere possession of reading material that describes a particular type of activity makes it neither more nor less likely that a defendant would intentionally engage in the conduct described and thus fails to meet the test of relevancy under Rule 401."). The government now argues that the evidence is properly admitted to establish Holt's knowledge regarding semi-automatic and fully automatic weapons. There are a number of problems with this argument. First, the record is devoid of any evidence that Holt ever read any of the materials he sold, and therefore the testimony could not demonstrate his knowledge. More importantly, that explanation is belied by the repeated references to the *Anarchist's Cookbook* sold at Patriot Arms. That book described how to make explosives, which are not at issue in the case, and was entirely unrelated to any issue regarding guns. Thus, the government's belated characterization of the testimony is incredible, and in any case also fails to meet the test under Rules 404(a) and 405.

■ Although the testimony was improperly admitted, the error was harmless because the evidence against Holt was overwhelming. First, we note that the character witnesses were nonplussed by the questions. In fact, a number of them pointed out that the sale of such books is lawful, and that such books are common at gun shops. This is not the type of evidence likely to alter the outcome of the trial, particularly given the other evidence against Holt in this case. More importantly, Holt himself introduced the topic numerous times—in his direct examination of two of his witnesses and in his own direct examination—in an apparent attempt to blame Salamanca for his decision to sell such books at his store. Because Holt himself testified regarding those books, the government's questions added little to the overall impact. Thus, the error was harmless.

## II

■ Holt next challenges limits placed on his cross-examination of government witness Cummings. Holt was not allowed to explore testimony before the jury that, in 1985, Cummings had become an informant for the BATF and the government in turn dropped criminal charges against him. Holt did not present this argument in the motion for a new trial which he filed within the 7–day time period. He first raised it in a "supplemental motion" filed after that time period, and the district court held that it was untimely. He now argues that the supplemental motion should be considered an amendment of the original motion and should be considered timely as such. That argument is contrary to the language of Federal Rules of Criminal Procedure 33 and 45(b), and must fail.

■ Rule 33 provides that "[a] motion for a new trial based on any other ground [than newly discovered evidence] shall be made within 7 days after verdict or finding of guilty or within such further time as the court may fix during the 7–day period." On its face, that Rule limits the motion to the 7–day period unless the defendant requests more time within those 7 days. Holt did not request an extension of time within the 7 days in order to file his amended motion. Furthermore, under Rule 45(b), a court "may not extend the time for taking any action under Rule ... 33 ... except to the extent and under the conditions stated in [that rule]." Therefore, the district court had no

discretion to extend the time for filing a motion for a new trial once the 7–day period had expired. The supplemental motion in this case raised two claims, neither of which had been presented in the original motion.[1] Holt's argument that we should allow an amended or supplemental motion to relate back to the original date would defeat the express language of the rule, and would create a back door through which defendants could raise additional grounds for a new trial long after the 7–day period had expired. We therefore agree with the district court, and with other circuits that have considered the issue, that a defendant cannot amend his motion for a new trial to include an additional ground after the 7–day period has expired unless the district court granted an extension of time within the original 7–day time period. *Accord United States v. Hall*, 854 F.2d 1269 (11th Cir.1988); *United States v. Newman*, 456 F.2d 668 (3rd Cir.1972). The district court properly refused to consider Holt's belated challenge to the cross-examination of Cummings. Even considering the claim, however, Holt failed to demonstrate error because he has not demonstrated the relevance of Cummings' 1985 relationship with the BATF to his current relationship with it; there is no indication that Cummings currently faces any criminal charges. Holt was permitted to elicit testimony that the BATF paid Cummings for his information in this case. Therefore, even considering the claim, there was no error on this record.

### III

Holt also challenges his sentence, arguing that the district court improperly imposed a 2–level enhancement under § 3B1.3 for abuse of a position of trust. Section 3B1.3 allows an enhancement when the defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." The government urges the applicability of that provision on three grounds: (1) in his capacity as a part-time police officer, Holt ran the license plate of a government informant, and found that he was driving a rental car; (2) Holt ignored his duties and responsibilities as a federal firearms dealer by trading in illegal weapons; and (3) Holt's dual status as a police officer and licensed firearms dealer facilitated the commission of the offense by providing a legitimate backdrop to illegal dealings. The district court held that the running of the license plate was an abuse of trust, and applied the two-level enhancement.

■ It is undisputed that Holt's position as a police officer enabled him to run the license plate, and that this could constitute an abuse of public trust. *See, e.g., United States v. Innamorati*, 996 F.2d 456, 489–90 (1st Cir.1993) (abuse of trust enhancement applied to police officer who ran license plate registry checks for drug distribution conspiracy). There is no evidence, however, that Holt's running of the license plate "significantly facilitated the commission or concealment of the offense." In fact, the government does not even make any argument indicating how it did so. Our independent review of the record reveals that Holt ran the license plate at the request of Salamanca, and that no further action was taken on the matter. The request from Salamanca came long after the purchase and sale of the M–14 at issue in this case. During that time, Salamanca was involved in the sale of other machine guns to the government informants, but there is no evidence that those transactions were part of the conspiracy for which Holt was convicted. In fact, the government acknowledged that Holt's crime was completed before he ran the license plates. Moreover, the government can point to no evidence indicating that the license check facilitated the concealment of Holt's crime, or even that it was related in any way to concealment of his crime. Because the Guidelines require "significant facilitation" and we have no evidence of that, the incident cannot support the enhancement.

---

1. One of the claims arguably involved newly discovered evidence, which then could be pursued in a motion beyond the 7–day time period. Holt does not assert that claim on appeal. We are left, then, with the claim regarding the cross–examination of Cummings, which does not involve newly discovered evidence.

We are left, then, with the government's alternative argument that the enhancement is justified because Holt abused a public trust arising from his position as holder of a federal firearms license. Setting aside the question of whether the federal firearms license creates a public trust, we hold that the enhancement was improper because Holt did not use that license to facilitate the offense. The license he possessed did not allow him to purchase fully automatic weapons. Therefore, he could not and did not use the license to purchase the M–14. Regarding the facilitation requirement, the government argues only that the federal firearms license allowed him to rent a booth at the gun show and therefore allowed him access to that market.[2] The government essentially asserts only that the license provided the opportunity for Holt to meet Buckner, and that contact led to the purchase of the M–14. That incidental access to Buckner, however, cannot in itself be sufficient to support an enhancement under § 3B1.3. Application Note 1 to § 3B1.3 states that "the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult)." The government's argument that the license allowed Holt to set up a booth at the gun show does not address that factor. At most, the booth at the gun show made Holt a more visible target for Buckner to approach with the illegal sale, but any other attendee at the gun show could have been approached, and a number of other dealers were approached first. The government does not assert that Holt's status as a license holder made the offense more difficult to detect. We are left then with nothing more than a contention that the license provided him mere access to Buckner, although it is not clear how that access was significantly different from the access obtained by non-license holders attending the show. In prior cases, we have found that the facilitation element was met where the position was used

to obtain information "essential" to the scheme, or where it furthered a "crucial element of the scheme." *See United States v. Zaragoza,* 123 F.3d 472, 482 (7th Cir.1997); *United States v. Emerson,* 128 F.3d 557, 563 (7th Cir.1997). We decline to extend the language of § 3B1.3 to include situations in which the alleged position of trust furthered the crime incidentally if at all. The government's argument in this case falls short of the "significant facilitation" required to support an abuse of trust enhancement.

Accordingly, we affirm the conviction, vacate the sentence, and remand for resentencing without the § 3B1.3 enhancement.

2. The PSR appeared to raise another ground: that Holt abused his trust by using his firearms license to trade six legal weapons for the machine gun. Presumably, this argument would include a claim that he falsely documented the weapons trade. The government does not pursue that argument in its brief on appeal, however, and we need not address it.