# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3824

_____

United States of America,      *
     *
      Appellee,      *
     *    Appeal from the United States
      v.      *    District Court for the
     *    District of Minnesota.
Gregory Allen True,      *
     *
      Appellant.      *

_____

Submitted: May 10, 1999

Filed: June 11, 1999

_____

Before MCMILLIAN, HEANEY, and FAGG, Circuit Judges.

_____

HEANEY, Circuit Judge.

Gregory Allen True was convicted on six drug-related counts and sentenced to 168 months imprisonment. On appeal, True challenges the sufficiency of the evidence supporting his conviction and contends that the government substantially interfered with a material, exculpatory defense witness resulting in a deprivation of his Fifth and Sixth Amendment rights. We affirm.

I.

As a preliminary matter, we have carefully reviewed the record and find no basis for True's contention that insufficient evidence supports his conviction. Of the evidence adduced at trial, the surveillance videotapes and audiotapes of numerous drug transactions alone support the conclusion that True engaged in the charged conduct and was an experienced drug dealer who had participated in such conduct in the past. True's allegation of government interference, however, warrants a more complete discussion.

The basis for True's argument that the prosecutor substantially interfered with a material defense witness is contained largely in the affidavits of Andrea George and Joseph Margulies, attorneys who represented Dale Oakland. Oakland pled guilty in his own federal drug case and received a sentence of 168 months. Before Oakland was Mirandized, he allegedly told police that True was his source for drugs. This statement was contained in a subsequent search warrant application that was introduced at True's trial. Subsequent to Oakland's original statement, he gave at least three tape-recorded statements that did not implicate (nor exonerate) True as his source for drugs.

Prior to True's trial, Assistant United States Attorney Carol Needles, who prosecuted both Oakland and True, contacted George "regarding Mr. Oakland's willingness to cooperate and testify against Mr. True in his upcoming trial in exchange for a possible sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure." (George Aff., Appellant's Br. at A-10.) George informed Needles that Oakland did not wish to testify favorably for the government. Sometime thereafter, Oakland was listed as a potential defense witness and subpoenaed in True's case. Needles indicated "that if Mr. Oakland testified contrary to the statement attributed to him within the search warrant of Greg True's home (that Greg True was his drug source) that Mr. Oakland could be subject to perjury charges." (George Aff., Appellant's Br. at A-10.) When asked whether Needles would actually charge

Oakland, "Needles responded that she probably would charge Mr. Oakland with perjury." (George Aff., Appellant's Br. at A-10.) Subsequently, Oakland was provided with new counsel, Margulies, whose advice he followed and asserted his Fifth Amendment right to refuse to testify at True's trial. Margulies' affidavit corroborates the facts set forth in George's affidavit, adding Needles' statement that "if Mr. Oakland testified that True was not the source for his [drugs], he risked not only a prosecution for perjury, but prosecution under [18 U.S.C.] § 1001 for making a false statement to a peace officer." (Margulies Aff., Appellant's Br. at A-14.)

In True's closing argument, his counsel stated that "Dale Oakland never testified in this case, wasn't called as a witness. Do you think if he was called as a witness, or he would testify against Greg True, the government would not have called him?" (Trial Tr. at 1375-76.) In her rebuttal closing argument, Needles responded that the government need not call every potential witness–specifically Oakland–and implied that True could have subpoenaed Oakland himself. The district court determined that Needles' comments were highly improper and issued a cautionary instruction:

> Members of the jury, you heard arguments yesterday concerning the absence of Dale Oakland as a witness. The government in rebuttal argument yesterday suggested that Gregory Allen True could have used a subpoena for Dale Oakland. You are instructed that Gregory Allen True did subpoena Dale Oakland to testify in this trial, and that Dale Oakland took the Fifth Amendment and refused to testify.

(Trial Tr. at 1442.)

At trial, the district court conducted a hearing to determine the basis of Oakland's silence and whether improper threats had coerced it. The district court determined by order, and again at the sentencing hearing, that the prosecutor's conduct did not constitute substantial interference with a material defense witness:

I have stated on the record, and it was clear when I re-read it, this case has a lot of problems with it, and I stated that on the record, but it does not, as far as I can see, rise to the extent that the Court can do anything regarding the calling of Mr. Oakland. It just isn't there.

It's one of the cases that leaves a bad taste in everybody's mouth, and I'm sure in the Government's mouth and certainly in Mr. True's mouth, and certainly the Court's mouth. But based on the law that has been submitted to me, and based on the law that I researched and based on the facts that we have, my order stands.

(Sentencing Hr'g Tr. at 5.) While we share the district court's disapproval, we are unable to say that the prosecutor violated True's Fifth or Sixth Amendment rights.

II.

We review findings of fact for clear error and the legal conclusions based on those facts de novo. See United States v. Beatty, 170 F.3d 811, 813 (8th Cir. 1999). "The test for reversible prosecutorial misconduct has two parts: (1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." United States v. Hernandez, 779 F.2d 456, 458 (8th Cir. 1985).

This case presents three questionable acts of the prosecutor. First, Needles offered a Rule 35 downward departure to Oakland for testifying on behalf of the government at True's trial. Second, Needles spoke with Oakland's attorneys regarding possible perjury charges. Finally, Needles suggested in rebuttal closing argument that True could have, but did not, subpoena Oakland.

With regard to the downward departure, the record reflects that the offer was made prior to Oakland being subpoenaed by True. Had the offer been made after the fact or in exchange for Oakland's silence, we would be inclined to conclude that Needles' offer constituted impermissibly coercive conduct. As it stands, however, Needles was not precluded by law from soliciting Oakland's testimony. Accordingly, this conduct was permissible.

True relies primarily on United States v. Vavages, 151 F.3d 1185 (9th Cir. 1998), to challenge Needles' remaining questionable conduct. In Vavages, as a result of government threats of perjury prosecution and withdrawal of a plea agreement in an unrelated case, a potential alibi witness invoked her Fifth Amendment rights and refused to testify for Vavages. See id. at 1187. At closing, the government commented on the defense's failure to present any adult alibi witnesses. See id. at 1191. Subsequent to Vavages' conviction, the district court held a *sua sponte* hearing to determine if the government threatened the potential witness. See id. at 1187. The district court determined that the government had coerced the witness into refusing to testify but that the conduct did not prejudice Vavages. See id.

In disagreeing with this assessment, the Ninth Circuit first observed that a "defendant alleging [interference with a defense witness] is required to demonstrate misconduct by a preponderance of the evidence. Whether substantial government interference occurred is a factual determination to be made by the district court that we review for clear error." Id. at 1188 (citations omitted). The court then stated:

> The substantial interference inquiry is extremely fact specific. Among the factors courts consider in determining the coercive impact of perjury warnings are the manner in which the prosecutor or judge raises the issue, the language of the warnings, and the prosecutor's or judge's basis in the record for believing the witness might lie. . . . Where, under the totality of the circumstances, "the substance of what the prosecutor communicates to the witness is a threat over and above what the record indicates is

necessary, and appropriate, the inference that the prosecutor sought to coerce a witness into silence is strong."

Id. at 1190 (citations omitted). The court cautioned that "[w]e do not mean to suggest that a prosecutor should *never* articulate his belief that a witness is lying. Rather, we disapprove of such conduct where the prosecutor lacks any substantial basis in the record for believing the witness is lying." Id. Specifically, "unusually strong admonitions against perjury are typically justified only where the prosecutor has a more substantial basis in the record for believing the witness might lie–for instance, a direct conflict between the witness' proposed testimony and her own prior testimony." Id. Finding such a substantial basis lacking in Vavages' case, the Ninth Circuit concluded that the district court erred in finding that Vavages had not been prejudiced by the prosecutor's misconduct. See id. at 1193.

Standing alone, Needles' comments regarding perjury and false statement charges are impermissible. Rather than a simple admonition against perjury, Needles stated that she could and would prosecute Oakland for perjury and/or making a false statement to a peace officer. While Needles may have had reason to believe that Oakland's testimony would have been false, her comments constituted an impermissible, coercive threat designed to prevent him from testifying. In response to the threat, the district court solicited full briefing from the parties regarding the misconduct. The district court held a hearing to examine the basis for Oakland's invocation of the Fifth Amendment and determined that, in addition to possible charges of perjury and false statements, the possibility of state prosecution on drug charges constituted a basis for his silence. We do not believe that the district court committed clear error when it determined that possible state charges counseled Oakland's invocation of the Fifth Amendment. Accordingly, we conclude that the record does not support the conclusion that Needles' comments caused Oakland's silence. True was not therefore prejudiced.

-6-

We agree with the district court that Needles' commentary on True's failure to subpoena Oakland was highly improper. In her favor and unlike the statement in <u>Vavages</u>, Needles made her comment in her rebuttal closing argument. While improper, her comment was a direct response to defense counsel's attempt to persuade the jury to draw an inference favorable to True from Oakland's failure to testify. Moreover, the district court issued a cautionary instruction that adequately addressed the improper mention–by both parties–of Oakland's failure to testify in closing arguments. Considering these facts, we cannot conclude that the comment prejudiced True.

Finally, we note that a prosecutor is not charged with manipulating possible defense witnesses. In the event that Oakland testified at True's trial, Needles would have been able to cross-examine him and could have subsequently charged him for any offense committed on the witness stand. This is the heart of the adversarial process and the way things should have proceeded. We do not endorse a course of prosecutorial conduct that promises to encroach on the adversarial process through back-room threats.

III.

For the reasons stated above, we affirm.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.