# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 99-2191

————————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　Appellee,　　　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　　　v.　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Minnesota.
Scott Phillip Flynn,　　　　　　　 *
　　　　　　　　　　　　　　　　　*
　　　　　　Appellant.　　　　　　 *

————————

Submitted:　October 19, 1999

Filed:　November 16, 1999

————————

Before WOLLMAN, Chief Judge, and HEANEY and LOKEN, Circuit Judges.

————————

HEANEY, Circuit Judge.

On September 10, 1998, Scott Phillip Flynn was convicted by a jury of seven counts of wire fraud in violation of 18 U.S.C. §§ 2(b) and 1343, and six counts of securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff(a), 18 U.S.C. §2(b), and 17 C.F.R. §240.10b-5. On September 17, 1998, Flynn moved for a judgment of acquittal or new trial. He based his motion on three grounds: insufficient evidence to sustain his convictions, prosecutorial misconduct, and juror misconduct. The district court denied this motion. On April 19, 1999, Flynn filed another motion for a new trial. This motion alleged misconduct by the district court in engaging in *ex parte*

communication with the jury. On April 26, 1999, the district court denied this motion and sentenced Flynn to twenty-seven months in prison.

Flynn's appeal raises three issues, two from his initial motion and one from his second motion. He argues that the evidence presented was insufficient to sustain his convictions, that the prosecutor made improper statements in his summation, and that the district court's conduct *vis-a-vis* the jury prejudiced his defense. The government responds to the three issues on their merits, and also argues that the third is procedurally barred. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Flynn claims the evidence presented at trial was insufficient to sustain his convictions. "In reviewing the sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict and accept as established all reasonable inferences supporting the verdict." United States v. Behr, 33 F.3d 1033, 1035 (8th Cir. 1994). We will not disturb a verdict unless the evidence presented at trial was such that a reasonable juror must have had a reasonable doubt about the existence of at least one of the elements of the crime. See id. The government's evidence need not exclude every theory except guilt in order for a jury to find a defendant guilty. See United States v. Andrade, 788 F.2d 521, 525 (8th Cir. 1986).

Flynn argues the government failed to establish that he had intended to defraud his victims. Intent is an essential element of both wire fraud and securities fraud. See Andrade, 788 F.2d at 527 (wire fraud); United States v. Smallwood, 443 F.2d 535, 541 (8th Cir. 1971) (securities fraud). Fraudulent intent need not be proved directly and can be inferred from the facts and circumstances surrounding a defendant's actions. See Behr, 33 F.3d at 1035. Accordingly, the question before us is "whether the facts and circumstances of this case, viewed in the light most favorable to the jury's verdict, are sufficient to establish intent to defraud . . . ." Andrade, 788 F.2d at 527.

The government presented evidence at trial that in the course of his employment as a stock broker, Flynn made misrepresentations to several different investors to persuade them to purchase stock. Flynn told these investors that certain stock available for purchase was restricted,[1] but that it would be free-trading[2] within a few months. The evidence at trial showed the stocks were restricted for a much longer period than what Flynn had told his investors.

Flynn does not dispute that he told his investors the wrong free-trading date, but he claims that his misrepresentations were unknowing and innocent. Flynn argues that he based his free-trading date on the advice of a co-worker, Curt Russell,[3] who was responsible for the company's compliance with applicable regulations. Russell was subpoenaed by Flynn to testify at trial, but asserted his Fifth Amendment privilege against self-incrimination.

Flynn presented no evidence at trial. Thus, the jury was left to consider two theories: Flynn's theory that he was an unwitting participant in a scheme devised by others in the company, and the government's theory that Flynn was fully aware of his misrepresentations and profited tidily from them. Both theories are consistent with the evidence presented; thus, we will not upset the jury's verdict.

## II. PROSECUTORIAL MISCONDUCT

---

[1]Restricted stock is stock that typically cannot be sold publicly for a period of two years, but may be sold in a private transaction. (Tr. Vol. I at 48-49.)

[2]A free-trading stock may be sold to the public on the open market. (Id.)

[3]Court documents refer to Mr. Russell both as "Curt" and "Kurt" Russell. On appeal, both parties refer to him as "Curt," and we follow suit.

Flynn next argues that the prosecutor's rebuttal to his closing argument was improper and merits a new trial. The crux of his argument is that the prosecutor's rebuttal statement that Flynn possessed the subpoena powerShinting Flynn had the ability to call witnesses to attempt to exonerate himselfSwas a false statement because Russell had in fact been subpoenaed and refused to testify.

The trial court has broad discretion in controlling the closing arguments of counsel, and we review for an abuse of discretion. See United States v. Johnson, 968 F.2d 768, 769-70 (8th Cir. 1992). In closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case. See United States v. Kragness, 830 F.2d 842, 872 (8th Cir. 1987); United States v. Lee, 743 F.2d 1240, 1253 (8th Cir. 1984). When, as here, the prosecutor's allegedly improper comments are in response to the defendant's attack, we are called upon to determine whether the prosecutor's comments were a fair response. See Lee, 743 F.2d at 1253-54.

In his closing argument, Flynn's attorney repeatedly chastised the government for not calling a number of witnesses, including the company's principals and Russell:

> These guys were making millions of dollars. These guys, including Mr. Curt Russell and Mr. Pete Mathews, and Mr. Paul Holmquist who the government never brought in here to talk to you about, I mean if these guys are not saying what I said is happening, then why didn't they bring them in here and tell you that? Why didn't they give us a fair chance to cross examine these people?

(Tr. Vol. V at 686.)

In his response, the prosecutor stated:

[Flynn's attorney] makes a big deal out of Grand Jury subpoenas and things like that and bringing people into court. And Mr. Flynn is entitled to the presumption of innocence. He doesn't have to put on any evidence, and there is no burden on him. The burden is on the United States. The defense also has the subpoena power.

(Trial Tr. Vol. V at 698-99.)

Defense counsel timely objected to the prosecutor's last sentence in the above paragraph and requested a curative instruction. The district court did not issue a curative instruction, relying instead on its final instructions, which reiterated that the burden of proof rested entirely upon the government.

In Kragness, we were faced with a similar situation. Counsel for Kragness and his fellow defendants argued in their summation that the prosecutor did not call all available witnesses, insinuating they were not called because they would not testify in support of the government's theory. In his rebuttal, the prosecutor advised the jury that the defendants could also call witnesses if they thought those witnesses would testify favorably. We held that this rebuttal statement was a fair response. See Kragness, 830 F.2d at 872.

Flynn directs us to United States v. True, No. 98-3824, 1999 WL 604202 (8th Cir. Aug. 11, 1999), cert. denied, 1999 WL 731782 (U.S. Nov. 1, 1999). In True, the defendant was charged with drug-related offenses. A potential government witness, Dale Oakland, gave a pretrial statement stating True was his source of drugs. At True's trial, Oakland advised that he would not testify consistent with his earlier statement. The prosecutor threatened Oakland with perjury charges if he were to testify inconsistent with his prior statement. Oakland then refused to testify at True's trial, asserting his Fifth Amendment privilege against self-incrimination. In his closing, True's counsel intimated that because Oakland did not testify, it could be assumed he would testify in True's favor. In her rebuttal, the prosecutor implied True himself could have subpoenaed Oakland to testify if he believed Oakland would testify in his

favor. The district court issued a curative instruction in response to the prosecutor's rebuttal. On appeal, we agreed with the district court that the statement was "highly improper," but concluded True had not been prejudiced thereby. See True, 1999 WL 604202, at *4.

While there are some similarities between the instant case and True, the prosecutor's conduct in this case is not as egregious as that in True. The prosecutor's comment followed his statement that the defendant bore no burden of proof and that he was presumed innocent. It also came after defense counsel suggested that Russell, Matthews, and Holmquist, if called, would have testified in Flynn's favor. Defense counsel's argument may have confused the jury into believing that only the government had the power to call witnesses. Unlike True, the prosecutor's rebuttal here did not focus on a specific unavailable witness, but rather was a statement of general applicability. In this case, we cannot say the district court abused its discretion in declining to give a curative instruction.

## III. EX PARTE JURY COMMUNICATION WITH THE DISTRICT COURT

Lastly, Flynn argues he was prejudiced by the district court's *ex parte* contact with the jury. During deliberations, the jury foreperson advised the jury clerk that another juror had stated, "[I]f we are not out of here in one hour, I will start beating someone up," and that he "wanted to be out of here by ten o'clock." Later, the jury clerk gave the district court a note regarding the clerk's contact with the jury, including what the foreperson had said. The district court did not immediately advise counsel of the clerk's note or the foreperson's comments, nor did he address the jury. Flynn contends the district court's decision not to respond was itself a response, and, pursuant to Federal Rule of Criminal Procedure 43, he had a right to be present during the jury clerk's communication, or at least informed of the communication, so he could suggest an alternative response to the foreperson's concern.

We need not address Flynn's argument on its merits. Except when based on the discovery of new evidence, a motion for new trial must be presented within seven days of a verdict or finding of guilty, unless the court grants the defendant an extension within the original seven-day time period. See Fed. R. Crim. P. 33. If a motion for new trial is not timely filed, the court lacks authority to grant a new trial. See United States v. Fiddler, 688 F.2d 45, 48 n.12 (8th Cir. 1982) (per curiam). Similarly, additional grounds for relief raised after a timely-filed motion are procedurally barred. See United States v. Holt, 170 F.3d 698, 702-03 (7th Cir. 1999).

Flynn was found guilty on September 10, 1998, and moved for a new trial on September 17, 1998. In his motion, Flynn maintained his trial had been tainted by juror misconduct, specifically, that the foreperson's contact with the jury clerk was a sufficient outside influence to warrant a new trial. The district court denied his motion. On April 19, 1999, Flynn filed a second motion for new trial, which he characterized as his "renewed motion." This time Flynn claimed that the district court erred in failing to notify counsel of the jury clerk's note immediately after receipt, essentially arguing that the district court violated Rule 43 by receiving a communication from the jury *ex parte*.

Flynn concedes he did not raise his argument that the district court violated Rule 43 until his second motion, (Appellant's Reply Br. at 2), but argues that it was nevertheless "tangentially raised in Appellant's initial, timely motion for new trial," (Appellant's Reply Br. at 1).

We have carefully reviewed the record, paying particular attention to Flynn's two motions for a new trial, and conclude that the second motion cannot properly be considered a renewal of the first motion. The relevant part of the first motion dealt exclusively with the foreperson's communication with the clerk. (Def.'s Mem. Supp. Mot. New Trial at 7.) The second motion was based not on the juror's communication

with the clerk, but rather on the district court's discovery of and response to[4] that communication. (Def.'s Mem. Supp. Renewed Mot. New Trial at 1-4.) Flynn did not allege juror misconduct in his second motion, but instead proceeded under the theory that he should have been present when the district court received the communication and given an opportunity to suggest a response. (Id.)

Flynn would have us consider two distinct, separate events–the interaction between the clerk and the foreperson, and the district court's discovery of and response to that interaction–as relating to the same underlying circumstances. Even if we were to accept his assertion that both of his motions were loosely based on the same facts, he still cannot overcome the procedural bar, since the motions allege very different violations of Flynn's rights–the first that he was prejudiced by the jury's conduct, and the second that he was prejudiced by the court's conduct. Because Flynn's "renewed" motion for a new trial was actually a second, untimely motion, we have no jurisdiction to consider its merits.[5]

CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Flynn's motions for a new trial.

---

[4]We assume for the sake of argument that the district court's silence in the face of the jury communication was itself a response.

[5]Flynn argues that even if his "renewed" motion is time-barred, we should consider it because the *ex parte* clerk-to-court communication (regarding the jury's communication with the clerk) was plain error. See Fed. R. Crim. P. 52(b). We find no merit in this claim.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.