# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 03-2068 & 04-1377

UNITED STATES OF AMERICA,

*Plaintiff-Appellant, Cross-Appellee,*

*v.*

IVAN EBERHART,

*Defendant-Appellee, Cross-Appellant.*

———————

Appeals from the United States District Court
for the Northern District of Illinois.
No. 98 CR 946—**James B. Zagel**, *Judge.*

———————

ARGUED OCTOBER 1, 2004—DECIDED OCTOBER 28, 2004

———————

Before FLAUM, *Chief Judge*, and BAUER and POSNER, *Circuit Judges*.

FLAUM, *Chief Judge*.  Ivan Eberhart was convicted by a jury of conspiring to distribute cocaine. Eberhart subsequently moved for a judgment of acquittal or in the alternative for a new trial. The district court denied the motion for judgment of acquittal, but granted the motion for a new trial. The government appeals the grant of a new trial, and Eberhart cross-appeals the denial of the judgment of acquittal. For the reasons stated herein, we reverse the grant of a new trial, remand for sentencing, and dismiss the cross-appeal for lack of jurisdiction.

## I. Background

On December 16, 1998, Drug Enforcement Agency ("DEA") Task Force Officer Daniel Foley and DEA Agent Robert Glynn arrested Charles Bolden for distributing cocaine. After being arrested, Bolden agreed to help the DEA apprehend his drug source, then identified only as "E." Officer Foley and Agent Glynn directed Bolden to telephone his source, order two kilograms of cocaine, and attempt to arrange a meeting in person. Bolden then called Eberhart:

> BOLDEN:       Hey I need you.
>
> EBERHART:   Okay. What flavor.
>
> BOLDEN:       Uh, I need about 2 more.
>
> EBERHART:   Okay [unintelligible].[1]

After several additional phone calls, the two men agreed to meet at 5:15 P.M. on December 17, 1998, "where we met at last time [ ] by the state trooper place." Before the meeting, Foley and Glynn fitted Bolden with an electronic recording and transmitting device. They then followed in a separate car as Bolden drove to a parking lot outside a Kentucky Fried Chicken at the intersection of East 83rd Street and South Martin Luther King Drive in Chicago.[2] At 5:15 P.M., Eberhart arrived. Bolden got into Eberhart's car and the two drove out of the parking lot. As they drove, Eberhart repeatedly asked Bolden what had happened to him while in DEA custody the day before.[3] After talking for several minutes, the men returned to the parking lot. When Bolden got out of the car, DEA agents arrested Eberhart.

---

[1]  The DEA recorded this and several other conversations between Bolden and Eberhart.

[2]  The parking lot was directly across the street from an Illinois State Police building.

[3]  Just before being arrested on December 16, 1998, Bolden called Eberhart and alerted him that the DEA was about to arrest him.

Although no drugs were found on Eberhart, he confessed that he had been distributing between twenty and forty kilograms of cocaine per month, that Bolden was one of his customers, and that he had sold Bolden two kilograms of cocaine on December 15, 1998. Eberhart also agreed to help the DEA arrest his source of supply, identified only as "Tommy." Defendant gave Foley and Glynn a physical description of Tommy, his cellular and pager phone numbers, and the location of a "stash house" out of which Tommy operated. Eberhart also explained that his standard procedure for obtaining additional cocaine was to call Tommy, schedule a pick up, and arrive at the stash house at either 6:00 A.M. or 6:00 P.M. to blend in with ordinary commuters.

At the direction of Foley and Glynn, Eberhart called Tommy to attempt to arrange a cocaine sale. On December 19, 1998, however, Eberhart terminated his cooperation with the DEA. The sale fell through, and Tommy was never apprehended. Despite these setbacks, Foley and Glynn searched the stash house identified by Eberhart, discovering a scale, a firearm, and two high-speed money counters.

On March 16, 1999, the grand jury for the Northern District of Illinois indicted Eberhart on one count of conspiring to distribute cocaine, and one count of distributing cocaine. At trial, the government introduced evidence of its investigation as described above.

On April 3, 2002, a jury acquitted Eberhart of the distribution charge, but convicted him of the conspiracy charge. The district court set May 15, 2002 as the deadline for post-trial motions. On May 15, 2002, Eberhart moved for judgment of acquittal or, in the alternative, a new trial. On October 30, 2002, Eberhart filed a supplemental memorandum in support of his motions for judgment of acquittal or a new trial.

On March 21, 2003, the district court denied the motion for judgment of acquittal, but granted the motion for a new trial. It cited three reasons justifying a new trial. First, the

court explained that it was concerned about the accuracy of a transcript of one of the phone conversations between Eberhart and Bolden that had been published to the jury. The transcript at issue (Transcript 7A) reflects the following exchange:

BOLDEN: Okay, so, [unintelligible] we gonna take care of them people? How you wanna do that?

EBERHART: I'm gonna, I'm gonna talk to you face to face.

BOLDEN: Okay. Alright, I'll see you then.[4]

In closing argument, the government repeatedly emphasized Eberhart's desire for a "face to face" meeting, asserting that this was consistent with the actions of a drug dealer attempting to avoid having his conversations recorded by law enforcement.

After trial, however, a defense expert opined that Transcript 7A incorrectly quoted Eberhart as calling for a "face to face" meeting. The expert asserted that, "it is impossible to determine from the tape what is actually being said. The phrase 'face to face' clearly does not fit with the rhythm and articulation of syllables on the tape."

The second reason cited by the district court as justifying a new trial was its belief that it might have erred in allowing potential hearsay testimony into evidence. During the government's case-in-chief, Foley testified about his post-arrest interview with Bolden, despite the fact that Bolden was not called as a witness. The government asked Foley who Bolden had identified as his source of supply. Over

---

[4] Transcript 7A was published to the jury without objection. Defense counsel later objected to allowing the jury to take all of the transcripts into the deliberation room. The district court overruled the objection.

defense counsel's objection, the district court permitted Foley to answer, instructing the jurors that they should consider the testimony only to explain the course of the investigation, not for its truth. Foley then testified that Bolden "agreed to make a phone call to 'E,' his source of supply, to obtain two more kilograms of cocaine." Defense counsel again objected, and asked that the court strike the testimony "about his source of supply, with reference to Ivan Eberhart." The district court overruled the objection. In granting the motion for a new trial, the district court reflected that "[w]ere I to rule on this issue again, I might rule differently."

Finally, the district court granted a new trial because it believed that it had erred by failing to give a buyer-seller instruction to the jury.[5] Defense counsel did not request the

---

[5] Seventh Circuit Pattern Jury Instruction 6.12 provides:

The existence of a simple buyer-seller relationship between a defendant and another person, without more, is not sufficient to establish a conspiracy, even where the buyer intends to resell [name the goods.] The fact that a defendant may have bought [name of goods] from another person or sold [name of goods] to another person is not sufficient without more to establish that the defendant was a member of the charged conspiracy.

In considering whether a conspiracy or a simple buyer-seller relationship existed, you should consider all of the evidence, including the following factors:

(1) Whether the transaction involved large quantities of [name of goods];

(2) Whether the parties had a standardized way of doing business over time;

(3) Whether the sales were on credit or on consignment;

(4) Whether the parties had a continuing relationship;

(5) Whether the seller had a financial stake in a resale by the buyer;

(continued...)

instruction, nor did he argue to the jury that Eberhart was innocent of the conspiracy charge because he and Bolden had a mere buyer-seller relationship.

In granting the motion, the district court explained: "none of these concerns standing alone or in pairing would cause me to grant a new trial," but the three issues cumulatively "persuade me that the interests of justice require a new trial." The court also noted, "I believe a new trial will quite likely lead to another conviction."

Of the three grounds cited by the district court, Eberhart's initial motion pointed only to the alleged flaw in Transcript 7A as justifying a new trial. The admission of Bolden's statement and the lack of a buyer-seller instruction were first raised in defendant's untimely supplemental memorandum. The government, however, did not argue to the district court that it lacked jurisdiction to consider the assertions raised in the supplemental memorandum.

## II. Discussion

### A. New Trial

We have jurisdiction to hear an appeal from the grant of a motion for a new trial under 18 U.S.C. § 3731, and review the district court's decision for abuse of discretion. *United States v. Woolfolk*, 197 F.3d 900, 904-05 (7th Cir. 1999); *United States v. Boyd*, 55 F.3d 239, 242 (7th Cir. 1995).

Federal Rule of Criminal Procedure 33 provides, in relevant part, that "the court may vacate any judgment and

---

(...continued)

    (6)  Whether the parties had an understanding that the [name of goods] would be resold.

No single factor necessarily indicates by itself that a defendant was or was not engaged in a simple buyer-seller relationship.

grant a new trial if the interest of justice so requires." "[C]ourts have interpreted [Rule 33] to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994) (quoting *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990), *amended on other grounds*, 910 F.2d 467 (7th Cir. 1990)). "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period." Fed. R. Crim. P. 33(b)(2).

The government contends that the district court abused its discretion by basing its decision to grant a new trial on arguments that were not timely raised by Eberhart. The government correctly points out that Eberhart's initial motion did not argue that the district court erred by admitting Bolden's statement or failing to give a buyer-seller instruction. Eberhart counters that the government forfeited its challenge to the timeliness of his supplemental memorandum by not raising the issue before the district court. *See United States v. Olano*, 507 U.S. 725, 731 (1993) (a party may forfeit a right by failing to timely assert it); *EEOC v. Ind. Bell Tel. Co.*, 256 F.3d 516, 526 (7th Cir. 2001) (claims of forfeiture may themselves be forfeited). The government replies that Rule 33's time limits are jurisdictional, and, therefore, may be raised for the first time on appeal. Accordingly, the question becomes whether Rule 33's time limits are "jurisdictional."

Federal Rule of Criminal Procedure 45(b)(2) provides, in relevant part, that "[t]he court may not extend the time to take any action under [Rule 33] . . . except as stated in [that]

rule[ ]." The Supreme Court has held that Rule 45(b)'s prohibition on extensions of time is "mandatory and jurisdictional." *United States v. Robinson*, 361 U.S. 220, 229 (1960); *see also United States v. Smith*, 331 U.S. 469, 474 n.2 (1947) (holding that Rule 33's time limitations cabin the district courts' power to grant a new trial). Following these precedents, "[w]e have previously emphasized that [Rule 33's] 7-day period is jurisdictional, and that the court is without jurisdiction to consider even an amendment to a timely new trial motion if it is filed outside the seven day period, absent a timely extension by the court or new evidence." *United States v. Washington*, 184 F.3d 653, 659 (7th Cir. 1999); s*ee also United States v. Hocking*, 841 F.2d 735, 736 (7th Cir. 1988).

Nevertheless, recent Supreme Court precedent casts doubt on whether Rule 33's time limitations are "jurisdictional" in the sense that they may be raised for the first time on appeal. In *Kontrick v. Ryan*, 124 S. Ct. 906, 910 (2004), the Supreme Court held that Federal Rule of Bankruptcy Procedure 4004, which governs the time for filing objections to a debtor's discharge, was not jurisdictional. The Court concluded, therefore, that a debtor could not challenge the timeliness of a creditor's objection after the objection had been decided on the merits. *Id.*

The Court explained that a rule is jurisdictional only if it "delineat[es] the classes of cases (subject-matter jurisdiction) [or] the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Id.* at 915. Mere "claim-processing rules," however, are not jurisdictional. *Id.*

The reasoning of *Kontrick* may suggest that Rule 33's time limits are merely inflexible claim-processing rules that could be forfeited if not timely asserted. *Kontrick* does not, however, expressly overrule *Robinson* or *Smith*. Because we find these earlier precedents controlling, we are bound to follow them until expressly overruled by the Supreme

Court. *Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). Accordingly, the government may challenge the timeliness of Eberhart's supplemental memorandum for the first time on appeal.

Having determined that we may reach the issue, we find that the district court lacked jurisdiction to consider the arguments raised in Eberhart's supplemental memorandum, which was filed well after the post-trial motions deadline. *See United States v. Holt*, 170 F.3d 698, 702-03 (7th Cir. 1999).

Eberhart contends, nevertheless, that the arguments raised in his supplemental memorandum were timely. First, defendant asserts that his initial motion preserved the objection to Bolden's statement by arguing that "the court erred by overruling defense objections and admitting improper evidence and argument to the jury on behalf of the government." The supplemental memorandum merely expanded upon a timely raised argument, Eberhart contends. We disagree. This vague reference did not "apprise[ ] the court of the precise nature of the alleged error," *United States v. Davis*, 15 F.3d 1393, 1406-07 (7th Cir. 1994).

Second, defendant asserts that the arguments raised in his supplemental memorandum relate back to his initial motion. We previously have rejected this theory: "[defendant's] argument that we should allow an amendment or supplemental motion to relate back to the original date would defeat the express language of the rule, and would create a back door through which defendants could raise additional grounds for the new trial long after the 7-day period had expired." *Holt*, 170 F.3d at 703.

Of the justifications for a new trial cited by the district court, therefore, only the alleged error in Transcript 7A was within its jurisdiction to consider. Standing alone, this was insufficient to justify a new trial.[6] Even if the transcript mistakenly quotes Eberhart as calling, *in haec verba*, for a "face to face" meeting, undisputed portions of the transcript make clear that the two men planned to meet in person.[7] Eberhart's exact choice of words was immaterial to the government's closing argument—that defendant's plan to meet in person was consistent with the actions of a drug dealer trying to evade detection by law enforcement.

Moreover, the district court instructed the jurors that: (i) the tape was evidence; (ii) the transcript was not evidence, but merely a guide to the contents of the tape; and (iii) in the event of a conflict between the two, the tape controlled. We presume that jurors follow the instructions given them. *United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998). "[T]his presumption is only overcome if there is an 'overwhelming probability' that the jury was unable to follow the instruction as given." *Id.* (quoting *Doe v. Johnson*, 52 F.3d 1448, 1458 (7th Cir. 1995)) (alteration in original). Eberhart offers no evidence to rebut this presumption.

Eberhart argues that two additional grounds rejected by the district court justify its decision to grant a new trial. First, defendant asserts that the introduction of Bolden's statement violated his rights under the Confrontation Clause. This argument was not raised in Eberhart's initial motion, and therefore cannot be considered. Were we to reach the

---

[6]  The district court recognized this: "none of these concerns standing alone or in pairing would cause me to grant a new trial."

[7]  For example, unchallenged portions of Transcript 7A quote Eberhart as saying, "I'm ready now. If you wanna see me now?" Moments later, Bolden suggests that they meet "where we met at last time [ ] by the state trooper place," to which Eberhart responds, "Yeah. Okay."

argument on the merits, it would fail. As discussed, Bolden's statement was offered solely to explain the course of the investigation. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford v. Washington*, 124 S. Ct. 1354, 1369 n.9 (2004). The government, moreover, did not dwell on Bolden's statement. To the contrary, it was defense counsel who connected the dots, asserted that "E" meant Eberhart, and revisited the issue of Bolden's statement on cross-examination.

Second, defendant contends that the government violated his Due Process rights by misrepresenting to the district court that Bolden was not peculiarly within its power to produce. Eberhart argues that the district court, based on this misinformation, denied his request for a missing witness instruction. Eberhart did not raise a Due Process argument in his initial motion for a new trial, and fails to point out any misrepresentation made by the government. This argument cannot, therefore, justify the district court's grant of a new trial.

The district court cited three alleged errors justifying its grant of defendant's motion for a new trial. The first two were beyond its jurisdiction to consider; the third was not error. Accordingly, the district court abused its discretion in granting a new trial.

## B.  Judgment of Acquittal

Eberhart cross-appeals the district court's denial of his motion for judgment of acquittal. Because the district court also granted defendant's motion for a new trial, Eberhart concedes that the denial of his motion for judgment of acquittal does not "end[ ] the litigation on the merits." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521 (1988)). Defendant argues, nevertheless, that we have ap-

pellate jurisdiction over his cross-appeal under the collateral order doctrine or the doctrine of pendent appellate jurisdiction. We disagree.

An order may be appealed under the collateral order doctrine only if it: (i) conclusively determines a disputed question; (ii) resolves an important issue separate from the merits of the action; and (iii) is effectively unreviewable on appeal from a final judgment. *United States v. Rinaldi*, 351 F.3d 285, 288 (7th Cir. 2003). The order at issue does not satisfy the latter two elements. First, a motion for judgment of acquittal requires a court to evaluate whether a reasonable jury could convict the defendant, and therefore is tied intimately to the merits. *See United States v. Ferguson*, 246 F.3d 129, 138 (2d Cir. 2001). Second, Eberhart's motion does not seek to vindicate a right that will be lost irreparably if the case is retried. *Cf. Abney v. United States*, 431 U.S. 651, 662 (1977). Thus, the ruling is effectively reviewable on appeal from a final judgment.

Nor is the denial of Eberhart's motion for judgment of acquittal appealable under the doctrine of pendent appellate jurisdiction. "That doctrine allows a court of appeals 'to review an otherwise unappealable interlocutory order if it is inextricably intertwined with an appealable one.'" *Montaño v. City of Chicago*, 375 F.3d 593, 599 (7th Cir. 2004) (quoting *Jones v. InfoCure Corp.*, 310 F.3d 529, 536 (7th Cir. 2002)).

It is doubtful that pendent appellate jurisdiction is available in criminal cases. In *Abney*, the Supreme Court held that a defendant could immediately appeal, under the collateral order doctrine, the denial of a motion to dismiss raising a Double Jeopardy defense. 431 U.S. at 662. The Court cautioned that its holding was "based on the special considerations permeating [Double Jeopardy claims]." *Id.* at 663. "[O]ther claims presented to, and rejected by, the district court in passing on the accused's motion to dismiss . . . . are appealable if, and only if, they too fall within [the] col-

lateral-order exception to the final-judgment rule." *Id.* Cases interpreting *Abney* appear to categorically foreclose pendent appellate jurisdiction in criminal cases. *See United States v. MacDonald*, 435 U.S. 850, 857 n.6 (1978); *United States v. Bloom*, 149 F.3d 649, 657 (7th Cir. 1998); *Ferguson*, 246 F.3d at 138; *United States v. Hsia*, 176 F.3d 517, 526 (D.C. Cir. 1999); *Robertson v. Mullins*, 29 F.3d 132, 136 n.6 (4th Cir. 1994); *United States v. Garner*, 632 F.2d 758, 763 n.2 (9th Cir. 1980). *But see United States v. Van Engel*, 15 F.3d 623, 629 (7th Cir. 1993) (suggesting that pendent appellate jurisdiction may be available in criminal cases); *United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1991) (same).

We need not decide, however, whether a litigant may ever invoke the doctrine in a criminal case, because it does not apply to Eberhart's cross-appeal. For pendent appellate jurisdiction to apply, "it must be practically indispensable that we address the merits of the unappealable order in order to resolve the properly-taken appeal." *Montaño*, 375 F.3d at 600 (quoting *United States ex rel. Valders Stone & Marble, Inc. v. C-Way Constr. Co.*, 909 F.2d 259, 262 (7th Cir. 1990)). "We can review an unappealable order only if it is so entwined with an appealable one that separate consideration would involve sheer duplication of effort by the parties and this court." *qad. inc. v. ALN Assocs., Inc.*, 974 F.2d 834, 836 (7th Cir. 1992) (quoting *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir. 1988)).

The two orders at issue in this case are not so closely related that they satisfy this test. To the contrary, "[a] plethora of courts have recognized a fundamental distinction in the standards governing these two motions." *Washington*, 184 F.3d at 657. A court considering a motion for judgment of acquittal must view the evidence in the light most favorable to the government, and only grant the motion if no rational jury could find guilt beyond a reasonable doubt. *Id.* By contrast, a court evaluating a motion for a new trial may

weigh evidence, evaluate credibility, and grant the motion if "the substantial rights of the defendant have been jeopardized." *Kuzniar*, 881 F.2d at 470. Because the standards governing the two motions are distinct, we may not exercise pendent appellate jurisdiction over defendant's cross-appeal.

## III.  Conclusion

For the reasons stated herein, we find that the district court abused its discretion in granting a new trial. We therefore REVERSE the district court's grant of a new trial and REMAND for sentencing. We DISMISS the cross-appeal for lack of jurisdiction.


A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*