UNITED STATES of America,
Plaintiff,

v.

Heath Damon SCHNEIDER,
Defendant.

No. CR00–4029MWB.

United States District Court,
N.D. Iowa,
Western Division.

Aug. 29, 2001.

United States Attorney's Office for the Northern District of Iowa, for Plaintiff U.S.

David E. Richter and Matthew D. Wilber of Richter & Wilber, Council Bluffs, IA, for Defendant Health Damon Schneider.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S POST-TRIAL MOTIONS

BENNETT, Chief Judge.

TABLE OF CONTENTS

I. INTRODUCTION ................................................. 1047

II. LEGAL ANALYSIS ............................................... 1049
 A. Schneider's Motion for Judgment of Acquittal ........................... 1049
 1. Standards applicable to motions for judgment of acquittal ............ 1049
 2. Sufficiency of the evidence ......................................... 1050
 B. Schneider's Motion for a New Trial .................................... 1054
 1. Standards applicable to motions for new trial ...................... 1054
 2. Prosecutorial Misconduct ......................................... 1056
 a. The rebuttal closing argument ................................ 1057
 i. Did defense counsel's comments invite the prosecutor's
 reply? ............................................ 1060
 ii. Was Schneider prejudiced by the prosecutor's
 comment? ......................................... 1063
 b. Marquardt's testimony ....................................... 1068
 3. Weight of the evidence ........................................... 1070

III. CONCLUSION ................................................. 1070

Here, the court is called upon to determine whether, during the government's rebuttal closing argument, the federal prosecutor impermissibly "summon[ed] that thirteenth juror, prejudice"[1] to secure a conviction against the defendant.

## I. INTRODUCTION

On July 27, 2000, a United States Grand Jury for the Northern District of Iowa returned a second superseding, one-count indictment charging that, between about July 1996 and continuing through about June 1999, defendant Heath Damon Schneider ("Schneider") did knowingly and unlawfully combine, conspire, and agree with other persons to commit the following two separate offenses: (1) distribution of five hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vii); and (2) distribution of five hundred (500) grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II con-

trolled substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii).

On March 19, 2001, the case against Schneider proceeded to trial before a jury. At trial, the government called two law enforcement officers, a criminalist, and six cooperating witnesses to testify in support of its case in chief against Schneider. Specifically, five of those six witnesses testified pursuant to written plea agreements, and one testified pursuant to an immunity agreement. The government also played three tape recorded conversations between Schneider and one of its cooperating witnesses, William Heiden, who testified that those conversations were representative of drug trafficking. At the close of the government's case, Schneider moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The court denied this motion. In his defense, Schneider denied that he was ever involved in the drug trade, instead proclaiming that he was involved in the loan business. Schneider took the stand and testified that he made several loans to individuals, including Heiden. To support his theory of defense, Schneider called Brandon Lund to

---

**1.** *United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 659 (2d. Cir.) (Frank J., dissent- ing), *cert. denied,* 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640, (1946).

the witness stand, wherein he testified that he was aware of the loans that Schneider made, and that he actually made loans to and received payments from Heiden on Schneider's behalf. Schneider also called to the witness stand an individual by the name of Randy Kotter who testified that he received numerous loans from Schneider and further that he was aware that Schneider routinely made loans to employees and friends. At the conclusion of all of the evidence, Schneider renewed his motion for judgment of acquittal, and, once again, the court denied this motion. On March 26, 2001, the jury returned a verdict of guilty as to the charge of conspiracy to commit both offenses, namely distribution of a mixture or substance containing a detectable amount of methamphetamine and distribution of a mixture or substance containing a detectable amount of cocaine. Although the government charged Schneider with over 500 grams as to both the methamphetamine offense and cocaine offense, the quantity of each controlled substance for which the jury found beyond a reasonable doubt Schneider was responsible consisted of the following: 50–499 grams of methamphetamine and less than 500 grams of cocaine.

On April 2, 2001, Schneider filed a timely post-trial Motion for Judgment of Acquittal (# 169) pursuant to Federal Rule of Criminal Procedure 29, as well as a Motion for New Trial (# 168) pursuant to Federal Rule of Criminal Procedure 33. In his post-trial Motion for Judgment of Acquittal, Schneider contends that the evidence introduced at trial was insufficient for a reasonable jury to return a verdict against him on the charge set forth in the indictment. In his post-trial Motion for New Trial, Schneider contends that he is enti-

tled to a new trial for the following reasons: (1) the government committed prosecutorial misconduct which deprived him of a fair trial; (2) the government withheld material exculpatory evidence from him; and (3) the verdict of the jury was contrary to the weight of the evidence. With respect to the alleged prosecutorial misconduct, Schneider specifically contends that the government engaged in an improper line of questioning of Toni Marquardt, and that the prosecutor made a highly improper comment during the rebuttal closing argument. With respect to the alleged withholding of evidence, Schneider specifically contends that the government failed to timely disclose William Heiden's perjury before the federal grand jury, and that the government failed to timely disclose prior trips to Mexico by William Heiden and Gail Swanson during which drugs were illegally obtained. Schneider argues that each one of these allegations of prosecutorial misconduct, individually, is grounds for a new trial, however, he also argues in the alternative that, in the event the court finds that each of these instances of alleged misconduct, taken individually, do not rise to the level of prejudice that would justify the granting of a new trial, the cumulative nature of the prosecutor's conduct would warrant the granting of a new trial. The government has resisted Schneider's post-trial motions.[2] On May 25, 2001, the court held a hearing on Schneider's post-trial motions. The court deems the matter fully submitted, and, therefore, turns initially to the standard of review governing motions for judgments of acquittal under Federal Rule of Criminal Procedure 29, and then to a legal analysis of the issues raised by Schneider in his motion for judgment of acquittal. Thereafter, but only if neces-

---

**2.** The government also seeks leave of court to file a consolidated memorandum in support of its resistance to defendant's post-trial motions. For good cause established, the court grants the government's request to file a consolidated memoranda in support of its resistance, which is Docket # 193.

sary, the court will address Schneider's motion for new trial.

## II. LEGAL ANALYSIS

### A. Schneider's Motion for Judgment of Acquittal

#### 1. Standards applicable to motions for judgment of acquittal

The court has considered in detail the standards applicable to motions for judgment of acquittal, *see United States v. Ortiz*, 40 F.Supp.2d 1073 1078–79 (N.D.Iowa 1999) and *United States v. Saborit*, 967 F.Supp. 1136, 1138–40 (N.D.Iowa 1997), and will set forth the highlights of those discussions, as well as some more recent case law, here. Rule 29 of the Federal Rules of Criminal Procedure provides, in pertinent part, as follows:

> The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

FED.R.CRIM.P. 29(a). Although Rule 29 specifically provides for such eventualities, it is well-settled that "[j]ury verdicts are not lightly overturned." *United States v. Hood*, 51 F.3d 128, 129 (8th Cir.1995); *accord United States v. Burks*, 934 F.2d 148, 151 (8th Cir.1991). Rather, the case law governing motions for judgment of acquittal confirms that a significant restraint is placed on a district court's authority to overturn a jury's verdict. *See United States v. Gomez*, 165 F.3d 650, 654 (8th Cir.1999) (observing that a judgment of acquittal should only be granted "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt"); *United States v. Perkins*, 94 F.3d 429, 436 (8th Cir.1996) (" '[t]he standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly.' ") (quoting *Burks*, 934 F.2d at 151), *cert. denied*, 519 U.S. 1136, 117 S.Ct. 1004, 136 L.Ed.2d 882 (1997).

■ The United States Court of Appeals for the Eighth Circuit has therefore instructed that "[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Moore*, 108 F.3d 878, 881 (8th Cir.1997); *Perkins*, 94 F.3d at 436 (" 'The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.' ") (quoting *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir.), *cert. denied*, 505 U.S. 1211, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992)). Here, Schneider contends that his motion for judgment of acquittal should be granted because the government's evidence at trial would not permit a reasonable jury to find him guilty beyond a reasonable doubt of the two offenses that were the objectives of the alleged conspiracy—that is, distribution of methamphetamine and distribution of cocaine.

■ In considering a motion for judgment of acquittal based on the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the guilty verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence."[3] *Unit-*

---

**3.** In *Ortiz*, this court noted that it had discussed in one of its earlier cases, *see Saborit*, 967 F.Supp. at 1140–43, the existence of two apparently inharmonious lines of Eighth Circuit authority regarding the standard to be applied when considering a challenge to the sufficiency of the evidence to sustain a conviction. *Ortiz*, 40 F.Supp.2d at 1079 n. 1 (citing *Saborit* and referring to *United States v. Baker*, 98 F.3d 330, 338 (8th Cir.1996), *cert. denied*,

ed States v. Basile, 109 F.3d 1304, 1310 (8th Cir.), cert. denied, 522 U.S. 866, 118 S.Ct. 173, 139 L.Ed.2d 115 (1997); accord United States v. Madrid, 224 F.3d 757, 761–62 (8th Cir.2000) (stating that "in reviewing the District Court's denial of the motion for acquittal, we view the evidence in the light most favorable to the verdict and will reverse only if no reasonable jury could have found beyond a reasonable doubt that the defendant is guilty of the offense charged") (citation omitted); United States v. Vig, 167 F.3d 443, 447 (8th Cir.1999) (observing that "[w]e review the district court's denial of a motion for judgment of acquittal based on the sufficiency of the evidence by viewing the evidence in the light most favorable to the verdict."). The court can overturn a jury's verdict only if " 'a reasonable fact-finder must have entertained a reasonable doubt about the government's proof' " of one of the essential elements of the crime charged. United States v. Kinshaw, 71 F.3d 268, 271 (8th Cir.1995) (quoting United States v. Nunn, 940 F.2d 1128, 1131 (8th Cir.1991)). Furthermore, "[t]his standard applies even when the conviction rests entirely on circumstantial evidence." United States v. Davis, 103 F.3d 660, 667 (8th Cir.1996), cert. denied, 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997).

 In addition to allowing a conviction to be based on circumstantial and/or direct evidence, the Eighth Circuit Court of Appeals has instructed that "[t]he evidence need not exclude every reasonable hypothesis except guilt." United States v. Baker, 98 F.3d 330, 338 (8th Cir.1996), cert. denied, 520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997). The court can neither weigh the evidence nor assess the credibility of the witnesses; these tasks belong exclusively to the jury. United States v. Ireland, 62 F.3d 227, 230 (8th Cir.1995) (noting it is the jury's job to judge the credibility of witnesses and to resolve contradictions in evidence).

### 2. Sufficiency of the evidence

 In the indictment, the United States charges that, between about July 1996 and continuing through about June 1999, defendant Schneider knowingly conspired with others to commit two separate offenses: (a) distribution of 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine; and (b) distribution of 500 grams or more of a mixture or substance containing a detectable amount of cocaine. In order to convict Schneider of conspiracy, the government had to show beyond a reasonable doubt, that: (1) between about July 1996 and about June 1999, two or more persons reached an agreement or came to an understanding to commit one or both of the offenses alleged; (2) Schneider voluntarily

520 U.S. 1179, 117 S.Ct. 1456, 137 L.Ed.2d 561 (1997)) (observing that if the evidence reasonably supports two conflicting hypotheses—guilt and innocence—the reviewing court must not disturb the jury's finding) and United States v. Davis, 103 F.3d 660, 667 (8th Cir.1996), cert. denied, 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997) (holding that " '[w]here the government's evidence is equally strong to infer innocence of the crime charged as it is to infer guilt, the verdict must be one of not guilty ...' " quoting United States v. Kelton, 446 F.2d 669, 671 (8th Cir. 1971)). Once again, the court observes as it did in Ortiz and Saborit, that during the last ten years, the Eighth Circuit Court of Appeals has overwhelmingly applied the Baker standard—that is, if the evidence reasonably supports two contrary theories, the reviewing court must not disturb the jury's determination. id. (citing Baker, 98 F.3d at 338); see also United States v. Turner, 157 F.3d 552, 556 n. 5 (8th Cir.1998) (noting apparent discrepancy and following Baker); United States v. Butler, 238 F.3d 1001, 1004 (8th Cir.2001) (citing Turner). Regardless of the standard applied in this case, the court concludes that the result as to the defendant's motion for judgment of acquittal would be the same.

and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; and (3) at the time Schneider joined in the agreement or understanding, he knew the purpose of the agreement or understanding. *See United States v. White,* 241 F.3d 1015, 1022 (8th Cir.2001) ("To convict a defendant of conspiracy, the government must prove beyond a reasonable doubt the following elements: (1) there was a conspiracy with an illegal purpose; (2) the defendant knew about the conspiracy; and (3) the defendant knowingly became a part of it.") (citing *United States v. Mosby,* 177 F.3d 1067, 1069 (8th Cir.1999) and *United States v. Bass,* 121 F.3d 1218, 1220 (8th Cir.1997)); *United States v. Jiminez–Perez,* 238 F.3d 970, 973 (8th Cir.2001) (same); *United States v. Holloway,* 128 F.3d 1254, 1257 (8th Cir.1997) ("To be guilty of conspiracy, a defendant must be shown to have knowingly entered into an agreement with at least one other person to violate the law."). Thus, the government had to prove that Schneider knowingly and voluntarily participated in an agreement to distribute methamphetamine and/or cocaine. *See United States v. Parker,* 32 F.3d 395, 399 (8th Cir.1994).

■ A conviction for conspiracy "may be based on circumstantial as well as direct evidence." *United States v. Erdman,* 953 F.2d 387, 389 (8th Cir.1992); *Jiminez–Perez,* 238 F.3d at 973. This is so, because "knowledge frequently cannot be proven except by circumstantial evidence, and the determination often depends on the credibility of the witnesses, as assessed by the factfinder." *See id.* at 390. Once the government establishes the existence of a conspiracy, only slight evidence is required to link a defendant to the conspiracy. *United States v. Womack,* 191 F.3d 879, 884 (8th Cir.1999); *see also United States v. Jenkins,* 78 F.3d 1283, 1287 (8th Cir.1996) ("Once the government establishes the ex-

istence of a drug conspiracy, only slight evidence linking the defendant to the conspiracy is required to prove the defendant's involvement and support the conviction."). This places a heavy burden on a defendant challenging the sufficiency of the evidence in a conspiracy case. *Id.; United States v. Madrid,* 224 F.3d 757, 761 (8th Cir.2000)("A defendant challenging the sufficiency of the evidence in a conspiracy case has a heavy burden, as proof of the crime may rest on indirect or circumstantial evidence.") (citation omitted). Nonetheless, the evidence must be sufficient to meet the *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) reasonable doubt standard— that is, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* "To be a conspirator, it is not required that [Schneider] knew all the details of the conspiracy." *United States v. Causor–Serrato,* 234 F.3d 384, 387 (8th Cir.2000) (citing *United States v. Hernandez,* 986 F.2d 234, 236 (8th Cir.1993)).

■ Indeed, based on principles of co-conspirator liability, Schneider is "criminally liable for the substantive offenses committed by another conspirator within the scope and in furtherance of the conspiracy." *United States v. Rodger,* 100 F.3d 90, 91 n. 2 (8th Cir.1996) (per curiam) (citing *Pinkerton v. United States,* 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489, (1946)). As the Eighth Circuit Court of Appeals recently explained in *Navarrete–Barron:*

We have said that "[u]nder *Pinkerton,* each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy, even though those members did

not participate in or agree to the specific criminal act." *United States v. Golter,* 880 F.2d 91, 93 (8th Cir.1989) (citations omitted).

In order to convict Navarrete–Barron of possession with intent to distribute cocaine base under 21 U.S.C. § 841, the government must first prove that Garcia knowingly or intentionally possessed 50 or more grams of cocaine base with intent to distribute. The government must then prove that Navarrete–Barron and Garcia were members of a conspiracy at the time of the possession, that the possession of the cocaine base was in furtherance of the conspiracy, and that Garcia's possession could have been reasonably foreseen by Navarrete–Barron as a natural outgrowth of the conspiracy. *See Pinkerton,* 328 U.S. at 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489.

*Navarrete–Barron,* 192 F.3d at 792–93; *see also Davis,* 154 F.3d at 783 ("As outlined in the jury instructions, *Pinkerton* liability requires that a member of the conspiracy committed the offense in furtherance of the conspiracy at a time when the defendant was also a member of the conspiracy and that the offense was a reasonably foreseeable consequence of the unlawful agreement."); *United States v. Rodger,* 100 F.3d 90, 91 n. 2 (8th Cir.1996 (a co-conspirator is liable for an offense in furtherance of the conspiracy "unless that offense could not reasonably have been foreseen as a necessary or natural consequence of the conspiracy"); *United States v. Friend,* 50 F.3d 548, 554 & n. 3 (8th Cir.1995) ("the government must prove that Apker's possession of a silencer-equipped firearm could have been reasonably foreseen by Friend" and "We reject Friend's contention that the district court erred in refusing to substitute "was reasonably foreseen" for "could have been reasonably foreseen" in its instruction defining the elements of the Count IX offense. We approved the term used by the district court as "fully comply[ing] with *Pinkerton's* requirements" in *[United States v.] Lucas,* 932 F.3d [1210,] 1220 (8th Cir.), *cert. denied,* 502 U.S. 929, 112 S.Ct. 349, 116 L.Ed.2d 288 (1991), *and cert. denied,* 502 U.S. 1100, 112 S.Ct. 1186, 117 L.Ed.2d 429 (1992)."), *vacated on other grounds,* 517 U.S. 1152, 116 S.Ct. 1538, 134 L.Ed.2d 643 (1996); *United States v. Lucht,* 18 F.3d 541, 554 (8th Cir.) (*Pinkerton* liability attaches where the offense "could have been reasonably foreseen as a necessary or natural consequence of the conspiracy"), *cert. denied,* 513 U.S. 949, 115 S.Ct. 363, 130 L.Ed.2d 316 (1994)); *United States v. Martinez,* 958 F.2d 217, 219 (8th Cir.1992) ("In *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), the Supreme Court held that a party to a conspiracy may be responsible for the substantive offense of a co-conspirator 'when the substantive offense is committed by one of the conspirators in furtherance of the [conspiracy].' This is true even though the party has no actual knowledge of the offense as long as it could be 'reasonably foreseen as a necessary or natural consequence of the [conspiracy].' *Id.* at 648, 66 S.Ct. at 1184.").

■■■ Viewing the totality of the evidence in the light most favorable to the government, as it must on a judgment of acquittal, the court concludes that the evidence is sufficient for the jury to have found that Schneider was guilty beyond a reasonable doubt of conspiracy to commit both offenses—that is, distribution of methamphetamine and distribution of cocaine. The government introduced evidence proving that, in 1996, a group of men originally from Denison, Iowa, including Schneider, Heiden, and Mark Pollack, lived in Las Vegas, Nevada. Both Pollack and Heiden testified that Schneider initially provided them with personal use quantities of drugs. Thereafter, Heiden testified

that he approached Schneider about Schneider becoming his drug source, after which a drug relationship between the two ensued. Heiden testified to the particulars about the drug operation, namely that he devised a plan whereby he would purchase drugs from Schneider, transport them from Las Vegas to Iowa by air, and sell them to his buyer in Iowa, an individual named Darrell Bissen. Bissen testified on behalf of the government, and corroborated Heiden's testimony regarding the transportation of the drugs from Nevada to Iowa.

The government also presented the testimony of six of Schneider's co-conspirators. Although five of those witnesses never directly observed Schneider distribute and or deliver drugs to Heiden, all four witnesses did provide circumstantial evidence that Heiden obtained drugs from Schneider. *See United States v. Beckman,* 222 F.3d 512, 522 (8th Cir.2000) ("Both direct and circumstantial evidence can be the basis of a conviction.") (citation omitted). For example, Gail Swanson testified that on two separate occasions when Heiden was unavailable to place their drug order with Schneider, he called Schneider himself and placed the order on Heiden's behalf. Swanson also testified that after he and Heiden had a falling out, he personally contacted Schneider in an attempt to recruit Schneider as his own drug supplier. According to Swanson, Schneider rejected his offer because Schneider did not want to exacerbate the already acrimonious relationship that existed between Swanson and Heiden. Toni Marquardt testified that Heiden divulged to her that Schneider was his drug source and that, on one occasion, while staying at Heiden's house waiting for

the drugs, she observed Schneider through a peephole in Heiden's door.[4] Furthermore, Heiden's roommate, Patrick Zamora, testified to his knowledge about the relationship between Heiden and Schneider. He testified that he saw Schneider at Heiden's apartment a half-dozen times, and that immediately after Schneider would leave, Heiden had larger drug quantities available and ready to weigh and repackage. Zamora testified that he answered the phone when Schneider would call the apartment asking for Heiden, and that based on his familiarity with Heiden and Heiden's relationship with Schneider, the business between Schneider and Heiden involved drugs.

Moreover, and most damaging to Schneider, was the testimony of Heiden, who testified at length about his drug dealings with Schneider. Significantly, three tape recorded conversations between Heiden and Schneider, which were played to the jury, corroborated Heiden's testimony regarding Schneider's involvement in the drug conspiracy. Although Schneider testified in his behalf and attempted to explain these tape recorded conversations with Heiden, ultimately the jury rejected his explanation. *See Ireland,* 62 F.3d at 230 (noting it is the jury's job to judge the credibility of witnesses and to resolve contradictions in evidence). While it is true that Heiden committed perjury to the federal grand jury in this case, his perjurious statement was revealed to the jury and, therefore, it was within the province of the jury to determine what weight, if any, to accord Heiden's testimony. Based on the verdict, the jury evidently concluded that despite Heiden's earlier perjured testimony before the federal grand jury, his trial

---

4. On cross-examination, Marquardt conceded that she could not see all of Schneider through the peephole. Marquardt also testified that she believed the person whom she observed through the peephole was Schneider based in part on what she saw and based in part on Heiden's statement that Schneider was his drug source. To a certain extent, therefore, Marquardt's identification of Schneider was questionable.

testimony was by and large truthful, especially given the three tape recorded conversations between himself and Schneider, which corroborated his testimony.

In reviewing the sufficiency of the evidence on defendant's motion for judgment of acquittal, this court must "view the evidence in the light most favorable to the government, and resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." *United States v. Surratt,* 172 F.3d 559, 562 (8th Cir.1999) (citations and internal quotations omitted). Viewing the evidence in such a light, and giving the government the benefit of all reasonable inferences, the court concludes that there is sufficient evidence in the trial record to support the jury's conviction of Schneider on the charge of conspiracy. It was the jury's function to evaluate Schneider's credibility and to weigh his testimony against Heiden's testimony and the government's other evidence of conspiracy. Therefore, the court will not overturn the jury's verdict of guilt on the charge of conspiracy and acquit Schneider. *See Surratt,* 172 F.3d at 565 ("It is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence. It is enough that the entire body of evidence be sufficient to convince the factfinder beyond a reasonable doubt of the defendant's guilt.") (citing *United States v. Noibi,* 780 F.2d 1419, 1422 (8th Cir.1986)). Accordingly, the court denies Schneider's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

## B. Schneider's Motion for a New Trial

Schneider has also moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Because the standards under which this motion is evaluated differ substantially from those applied to a motion for judgment of acquittal, the court will begin by setting forth the governing standards, and will then turn to its consideration of the defendant's motion for new trial.

### 1. Standards applicable to motions for new trial

In *Saborit,* this court also had occasion to consider in some detail the standards applicable to motions for new trial. *Saborit,* 967 F.Supp. at 1144–45. Rather than repeat that discussion in its entirety here, the court will again set forth the highlights of these standards.

Federal Rule of Criminal Procedure 33 provides in relevant part as follows: "The court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice." FED. R.CRIM.P. 33. District courts have broad discretion in passing upon motions for new trial and such rulings are subject to reversal only for a clear abuse of discretion. *See United States v. Wilkins,* 139 F.3d 603, 604 (8th Cir.1998); *United States v. Brown,* 108 F.3d 863, 866 (8th Cir.1997); *United States v. Blumeyer,* 62 F.3d 1013, 1015 (8th Cir.1995), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 212 (1996).

A court evaluates a Rule 33 motion from a different vantage point than it evaluates a Rule 29 motion for judgment of acquittal. *Ortiz,* 40 F.Supp.2d at 1082. Indeed, "[a] district court's power to order a new trial is greater than its power to grant a motion for acquittal." *United States v. Ruiz,* 105 F.3d 1492, 1501 (1st Cir.1997); *accord United States v. Bennett,* 956 F.2d 1476, 1481 (8th Cir.1992) ("This narrowly constricted power of review [applicable to motions for judgment of acquittal] is in contrast to the district court's broad discretion in ruling upon a motion for new trial."); *United States v. A. Lanoy Alston, D.M.D., P.C.,* 974 F.2d 1206, 1211 (9th Cir.1992) ("A district

court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal."). In assessing whether a defendant is entitled to a new trial on the ground that the verdict is contrary to the weight of the evidence, "the district court weighs the evidence and evaluates anew the credibility of the witnesses to determine if a miscarriage of justice may have occurred." *Davis,* 103 F.3d at 668; *accord United States v. Misle Bus & Equip. Co.,* 967 F.2d 1227, 1232 (8th Cir.1992); *United States v. Brown,* 956 F.2d 782, 786 (8th Cir.1992). As the United States Court of Appeals for the Eighth Circuit has explained:

> "When a motion for a new trial is made on the ground that the verdict is contrary to the weight of the evidence, the issues are far different from those raised by a motion for judgment of acquittal. The question is whether he is entitled to a new trial. In assessing the defendant's right to a new trial, the court must weigh the evidence and in doing so evaluate for itself the credibility of the witnesses." *United States v. Lincoln,* 630 F.2d [1313,] 1316 [ (8th Cir.1980) ]. The court will only set aside the verdict if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred.

*United States v. Rodriguez,* 812 F.2d 414, 417 (8th Cir.1987). The authority to grant new trials, however, "should be used sparingly and with caution." *United States v. Lincoln,* 630 F.2d 1313, 1319 (8th Cir. 1980).

 When alleged prosecutorial misconduct is the basis for a defendant's new trial motion, the Eighth Circuit Court of Appeals has clearly set forth a two-part test for reversible prosecutorial misconduct: "[F]irst, the prosecutor's conduct or remarks must have been improper, and second, the remarks or conduct must have prejudicially affected the defendant's substantial rights by depriving the defendant of a fair trial." *United States v. White,* 241 F.3d 1015, 1023 (8th Cir.2001) (citing *United States v. Beeks,* 224 F.3d 741, 745 (8th Cir.2000)). "Inappropriate prosecutorial comments, standing alone, [do] not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, ... the remarks must be examined within the context of the trial to determine whether the Prosecutor's behavior amounted to prejudicial error." *United States v. Franklin,* 250 F.3d 653, 660–61 (8th Cir. May 22, 2001) (citing *United States v. Nelson,* 988 F.2d 798, 807 (8th Cir.1993)). In assessing the prejudicial impact of prosecutorial misconduct, a reviewing court should consider: (1) the cumulative effect of the misconduct; (2) the strength of the properly admitted evidence; and (3) the curative actions taken by the district court. *United States v. Wadlington,* 233 F.3d 1067, 1077 (8th Cir. 2000); *United States v. Beckman,* 222 F.3d 512, 526 (8th Cir.2000) (same); *United States v. Beeks,* 224 F.3d 741, 745 (8th Cir.2000) (same). "However, a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated." *United States v. Johnson,* 968 F.2d 768, 771 (8th Cir. 1992) (internal quotations omitted). The key question ultimately is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *see also United States v. Young,* 470 U.S. 1, 11–12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (explaining that criminal conviction was not readily overturned on basis of prosecutor's comments alone; statements must be viewed in context of entire proceeding in order to determine whether

conduct affected fairness of trial); *Beckman*, 222 F.3d at 526.

 Generally, "a prosecutor may not express a personal opinion about a defendant's veracity." *White*, 241 F.3d at 1023 (citations omitted). Rather, a prosecutor is constrained to "the evidence and the reasonable inferences that may be drawn from it." *Id.* (citing *United States v. Robinson*, 110 F.3d 1320, 1327 (8th Cir. 1997)). Moreover, during closing argument, "an attorney's role is to assist the jury in analyzing, evaluating, and applying the evidence. Arguments that transcend such boundaries are improper." *United States v. Beckman*, 222 F.3d 512, 527 (8th Cir.2000). Having examined the appropriate standard of review, the court turns now to its consideration of Schneider's motion.

### 2. *Prosecutorial Misconduct*

Schneider asserts that the prosecutor committed four separate incidents of prosecutorial misconduct. First, Schneider contends that, on the second day of trial, the prosecutor informed defense counsel that Heiden had admitted to committing perjury before the federal grand jury in this case. Defense counsel avers that he was led to believe that this information had been discovered by the government only the night before the second day of trial, however, it was discovered that the government had been aware of this information ten to fourteen days prior to the beginning of trial. As a result, Schneider argues that the government's failure to timely disclose such pertinent information constitutes prosecutorial misconduct. Second, Schneider contends that, on the third day of trial, cooperating witness Toni Marquardt was called to the stand, whereupon the prosecutor asked Marquardt if there was any particular reason she was especially nervous. Marquardt explained that her nervous demeanor was caused by Schneider's sister's boyfriend, Brian Truitt, who had "flipped her off" and tried to run her off the road that morning while she was en route to testify against Schneider. Schneider argues that this improper line of questioning by the prosecutor constitutes prosecutorial misconduct. Third, Schneider contends that, at the end of the third day of trial, the FBI case agent testified that he had been aware, through discussions with Gail Swanson, that Heiden and Swanson made trips to Mexico wherein drugs had been purchased. On the witness stand, the FBI case agent conceded that if this information was not contained in the FBI–302's of Gail Swanson, defense counsel would not have been aware of these trips until it came out on the witness stand. Defense counsel asserts that it reviewed the FBI–302's of Gail Swanson and found no mention of any trips to Mexico. As a result, Schneider argues that the prosecutor's failure to timely disclose this information constitutes prosecutorial misconduct. Fourth, Schneider contends that, during the government's rebuttal closing argument, the prosecutor made the following improper remark: "Another double standard regarding polygraphing the government's witnesses, by God, those witnesses weren't polygraphed, where's the defendant's polygraph?" Schneider argues that this remark was improper and constitutes prosecutorial misconduct. In response, the government argues these allegations of prosecutorial misconduct are not alone, or cumulatively, grounds for a new trial.

The court will begin its analysis with what it considers to be the most serious of the prosecutorial misconduct allegations identified above, namely, the alleged highly improper remark made during the government's rebuttal closing argument. In considering this allegation, the court will also address the other three allegations of prosecutorial misconduct with particular

attention devoted to the prosecutor's questioning of cooperating witness Toni Marquardt.

### a. The rebuttal closing argument

Schneider contends that the prosecutor's following remark, which was made during the rebuttal closing argument, constitutes prosecutorial misconduct:

> What I am going to talk about is a double standard here, the defendant's double standard. Remember how witnesses were essentially berated, how they were just indignant that witnesses couldn't come up with specific dates? We need a month. We need a year. And remember what Brandon Lund could do with dates? He could barely give you the date he was married. He could give us no specific dates about what anything happened that he testified to. That's the first double standard.
>
> *Another double standard regarding polygraphing the government's witnesses, by God, those witnesses weren't polygraphed, where's the defendant's polygraph?*

Trial Transcript of Rebuttal Closing Argument on Behalf of the Plaintiff at 7 (emphasis added). Specifically, Schneider contends that the prosecutor's statement improperly suggested that he had the burden of producing evidence to prove his innocence, and that the results of polygraph examinations would somehow be admissible at trial. Schneider further contends that this statement was inflammatory, extremely prejudicial, and intentionally misleading because Schneider had previously offered to submit to a polygraph examination on two occasions, both of which the government rejected.

In response, the government contends that the remark above was made in response to defendant's repeated arguments attacking the government for failing to conduct polygraph examinations of government witnesses. Specifically, the government contends that the prosecutor's statement in the rebuttal closing argument was an "invited response" or "invited reply" as that concept was examined by the United States Supreme Court in *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). In the alternative, the government argues that even if the prosecutor's statement is not deemed to be an "invited response," in the context of the entire trial, Schneider was not deprived of a fair trial. In support of this argument, the government emphasizes the curative instruction that this court issued to the jury before it began to deliberate. Having outlined the parties' arguments, the court finds that a brief capsule summary of the salient facts from the trial, as well as defense counsel's statements made during closing argument that allegedly "invited" the prosecutor's remark made during the rebuttal closing argument, would be beneficial here.

As noted earlier, the government's case against Schneider rested heavily on the testimony of six cooperating witnesses who were part of the same conspiracy. Of those six witnesses, five of them testified pursuant to plea agreements. Thus, in return for their cooperation, the witnesses hoped to gain a reduction in their respective sentences from substantial assistance motions filed by the government. As the government called each of those five witnesses to testify, the government moved into evidence the written plea agreements that each of them had entered into with the government. Included in each of these written plea agreements was a paragraph that each witness consented to voluntarily submit to a polygraph examination if requested to do so by the government. Specifically, that paragraph consisted of the following:

It is understood that, upon request by the government, the defendant will voluntarily submit to a polygraph examination. If performance in any polygraph examination suggests a conscious intent to deceive, mislead or lie and the totality of circumstances convinces the government that the defendant's statement is not complete and truthful, the defendant will be so informed and any and all obligations imposed on the government by the agreement will be rendered null and void. This decision to nullify the agreement will be in the sole discretion of the United States Attorney's Office for the Northern District of Iowa.

See Government's Exhibits 13 at ¶ 8, 10 at ¶ 8, 12 at ¶ 8, 7[5] at ¶ 19, and 8 at ¶ 18. The defense vigorously cross-examined the cooperating witnesses as to whether any had taken a polygraph test and whether the government had requested them to take a polygraph test. All of the cooperating witnesses indicated that they had not been polygraphed by the government, and that no request had been made. Significantly, when the defense asked the witnesses these questions, the government did not object to the questions.[6] Thus, both the written plea agreements containing this paragraph as well as the answers provided by the cooperating witnesses were in evidence. Additionally, on cross-examination, defense counsel elicited testimony from the FBI case agent that, while testifying before the federal grand jury in this case, he had testified he knew his witnesses were telling him the truth be-

---

5. The language in the paragraphs concerning the use of a polygraph in the plea agreements marked Government Exhibits 7 and 8 differ slightly from the language contained in the other three plea agreements. This is so, because three of the cooperating witnesses signed plea agreements in the Northern District of Iowa, and the other two cooperating witnesses signed plea agreements in the Southern District of Iowa. Although the essence of the paragraphs regarding the government's polygraphing of its witnesses from both of the districts is virtually the same, for purposes of being thorough, the court finds that a full reprisal of the exact language used in Exhibits 7 and 8 would be judicious:

Defendant agrees that, upon request by the government, he will voluntarily submit to a polygraph examiner of the government's choice. In the event that he is called upon by the government to submit to a polygraph examination and his performance in the examination suggests a conscious intent to deceive, mislead or lie with respect to his assets, he will be afforded an opportunity to review and explain the deceptive responses to the government. If the totality of the circumstances convinces the government that his financial statement is not complete and truthful, he will be so informed. The government is then not limited to forfeiture set forth in this plea, but any and all forfeiture remedies available.

See Government's Exhibit 7 at ¶ 19, 8 at ¶ 18.

6. In its memorandum, the government acknowledges that it didn't object to this line of questioning, expressly stating "The court should finally note that the polygraph theme was chosen by the defense, not the government, and in hindsight (which is always 20/20), should have been the subject of a government objection." See Memorandum in Support of Government's Resistance to Defendant's Post–Trial Motions for Judgment of Acquittal and New Trial at 15 n. 2. The government also cites to United States v. Zaccaria, 240 F.3d 75, 80–81 (1st Cir.2001), representing that the circuit court upheld the district court's exclusion of testimony regarding non-administration of polygraphs since the proposed inquiry was "wholly irrelevant, potentially confusing, and unfairly prejudicial." Id. The Zaccaria case, however, is distinguishable from this case, because it was the government through the written plea agreements, who put into evidence the issue regarding polygraph testing. Indeed, in Zaccaria, there was no mention of written plea agreements containing a paragraph obligating a cooperating witness to submit to a polygraph test if requested to do so by the government that were part of the evidentiary record.

cause "[w]e use polygraphs to polygraph out witnesses to make sure they're shooting square with us." The government did not interpose any objection with respect to defense counsel's questioning of the FBI case agent. Furthermore, prior to the government's initial closing argument, defense counsel provided the prosecutor with an opportunity to review the demonstrative exhibits that they intended to use during his closing argument. One of those exhibits, namely Defendant's Exhibit A, which read "To Polygraph or Not to Polygraph? That is the Question" and was captioned in bold black underlined print, clearly indicated that the defense planned on arguing to the jury the government's failure to polygraph its witnesses. Once again, the government did not object to the defendant's use of this demonstrative exhibit or this line of argument. In sum, the government never objected to the admission of any evidence that the defense presented relating to polygraph examinations of the government's cooperating witnesses.

The court now turns to that portion of defense counsel's closing argument that allegedly invited the prosecutor's response in the rebuttal closing argument. In his closing argument, defense counsel argued the following:

> A trial is an effort to find the truth. The government needs to bring forward to you, the government needs to bring forward to you, that amount of evidence that takes that shell, that steel shell, of presumption of innocence that comes into this trial around our client and beats it away. What did they bring you, and what didn't they bring you, and are you really entitled to more and better evidence than this? I think if you go to one place, the testimony of your—the FBI agent, [ ], he testifies that he agrees he said to the federal grand jury and he was testifying in this case, in answer to the question how do we know

these guys are telling the truth, you recall what he said he said. The answer is synopsized up here on the wall, but I think it was something to the effect we put people in jail cells to make sure they're not shining on the FBI, and we polygraph over witnesses to make sure they're shooting straight with us. Question says you don't just believe them? Nope. Till we do that, we take them with a grain of salt. Ladies and gentlemen, if there's one fact in this case and one thing only that I would just be highly, highly, highly suspicious about, I would say where's the beef? Where's the beef? Why didn't you polygraph those witnesses? We saw them get chopped up, minced up. Some of them did pretty good. How much of what they said was true? Only you get to decide that. But the government has the burden of proof. Why didn't they out them on a polygraph? They have a written agreement, written agreements with these people, that they'll do it. Why didn't they, and why did [the FBI case agent] go to the federal grand jury and say we polygraph our witnesses, and until we do we take everything they say with a grain of salt? If you want to take the testimony of [the FBI case agent] under oath, take that to the jury room: Until they're polygraphed, you take it with a grain of salt, particularly the Heiden situation.

> . . . . .

> Is Heiden telling the truth in this case? That's what this is all about. Are you satisfied without that polygraph beyond a reasonable doubt that he's telling the truth? It's an easy way to go about it. Makes it real simple.

Realtime Transcript of Defense Counsel's Closing Argument at 26–27. Once again, the court notes that at no time during defense counsel's closing argument did the prosecutor interpose an objection.

### i. Did defense counsel's comments invite the prosecutor's reply?

 In *United States v. Flynn,* 196 F.3d 927 (8th Cir.1999), the Eighth Circuit Court of Appeals explained that "[i]n closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case." *Id.* at 930 (citations omitted). The *Flynn* court further stated that when a prosecutor's allegedly improper comments are in response to the defendant's attack, the court must determine whether the prosecutor's comments were a fair response. *Id.* The United States Supreme Court in *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) discussed the "invited reply" or fair response rule, explaining that the idea of "invited response" is used not to excuse improper comments, but to determine their effect on the trial as a whole. *Id.* at 13, 105 S.Ct. 1038. In assessing whether the prosecutor's comment was "invited," the *Young* court stated:

> In order to make an appropriate assessment, the reviewing court must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo. Thus the import of the evaluation has been that if the prosecutor's remarks were "invited," and did not more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction.

*Id.* at 12, 105 S.Ct. 1038.

 Upon reviewing the evidence and the defense counsel's "opening salvo," this court concludes that the prosecutor's statement was not an invited response to defense counsel's statements during closing argument. This is so for the following reasons. First, defense counsel's argument regarding the government's ability to polygraph the cooperating witnesses and its failure to do so in this case was based on evidence submitted by the government by way of the written plea agreements in the government's direct examination of the cooperating witnesses in its case in chief. Thus, defense counsel's reference to the non-administration of polygraph tests during his argument was proper, because he was arguing evidence, evidence that the prosecutor failed to object to despite having had the opportunity to do so several times. In contrast, there was no evidence regarding the defendant's failure to administer polygraph tests to his witnesses much less to himself. This is so because unlike the government, a defendant does not have plea agreements with his/her witnesses which obligate them to submit to polygraph examinations. Therefore, when the prosecutor commented about Schneider's and his witnesses' failure to submit to polygraph tests, such commentary was not based on any evidence adduced at trial, *see United States v. Beckman,* 222 F.3d 512, 527 (8th Cir.2000) (explaining that during closing argument, "an attorney's role is to assist the jury in analyzing, evaluating, and applying the evidence. Arguments that transcend such boundaries are improper"), nor was it even tied to any evidence presented at trial or reasonably inferred from that evidence, *see United States v. Wilson,* 135 F.3d 291, 297–302 (4th Cir.1998) (prosecutor's remarks during closing arguments in drug trafficking trial that defendant shot a man dead violated due process because the argument was not based on evidence of record or any reasonable inference therefrom); *see also United States v. Robbins,* 197 F.3d 829, 843 (7th Cir.1999) ("The trial focused on the credibility of the cooperating witnesses. There is nothing improper about a prosecutor's comments concerning the credibility of a witness as long as the comments are tied to the evidence presented at trial or reasonable inferences from that evidence.").

Second, it is clear from defense counsel's closing argument that the defendant's theory of defense was that the government's cooperating witnesses implicated Schneider so that they could receive sentence reductions. As a result, defense counsel attacked the credibility of the cooperating witnesses, especially the credibility of Heiden, and the government's decision not to polygraph them. Indeed, attacking the credibility of the cooperating witnesses was the cornerstone of the defendant's theory of defense, especially since the government's key witness, Heiden, admitted during trial that he committed perjury before the grand jury. The defense argued this point repeatedly, commenting on the government's knowledge of Heiden's perjury yet its failure to request Heiden to submit to a polygraph exam. The defense honed in on this piece of evidence for purposes of arguing reasonable doubt, emphasizing that it is the government's burden/obligation to seek the truth and the administration of a polygraph exam would have helped get to the truth of the matter. Undoubtedly, defense counsel's remarks regarding the cooperating witnesses' credibility invited a response from the prosecutor in order to "right the scale." *See Franklin*, 250 F.3d at 661 (stating that in "this Circuit, [w]here the Prosecutor, his witnesses, or the work of the government agents is attacked [by defense counsel], the District Attorney is entitled to make a fair response and rebuttal") (internal quotation and citation omitted); *see also Young*, 470 U.S. at 12, 105 S.Ct. 1038 (explaining that "if the prosecutor's remarks were invited, and did no more than respond substantially in order to right the scale, such comments would not warrant reversing a conviction") (internal quotations omitted); *United States v. Figueroa*, 900 F.2d 1211, 1216 (8th Cir.1990) ("Certainly the government has a right to respond to de-

fense arguments."). The prosecutor would have been within his/her bounds to comment on the reasons why the jury should find the cooperating witnesses' testimony credible, including eliciting testimony that if the cooperating witnesses testified untruthfully the government would not make any substantial assistance motions on their behalf in order to have their sentences reduced. *See, e.g. United States v. Munoz*, 150 F.3d 401, 414–15 (5th Cir.1998) (prosecutor's comments during closing argument regarding government witnesses' truthfulness were not reversible error because comments were invited by defendant's effort to expose the government witnesses as liars). However, defense counsel's remarks during his closing argument did not open the door for the prosecutor to comment upon Schneider's failure to take a polygraph exam or his witnesses' failure to take polygraph exams. This is so because, the prosecutor's remark improperly implies first, that the results of such tests would be admissible, and second, that the defendant has the burden of proving his innocence. The prosecutor clearly intimated to the jury that it could, and should, draw an adverse inference from the defendant's failure and the defense witnesses' failure to submit to polygraph examinations. This is critical because the inference garnered from the prosecutor's comment shifts the burden of proof from the government to the defendant. In other words, the prosecutor argued to the jury that if Schneider was truly innocent he, along with his witnesses, would have taken polygraph tests, which improperly intimates to the jury that it is the defendant's burden to prove his innocence. Because the prosecutor improperly argued the defendant's obligation and his witnesses' obligation to submit to polygraph examinations, this court is unable to state that the "prosecutor's [comment]

did not shake [its] faith in the jury's verdict." *United States v. Carter*, 236 F.3d 777, 788 (6th Cir.2001) (declaring that "we cannot state that the prosecutor's conduct did not shake our faith in the jury's verdict").

 Morever, the court is deeply troubled by the prosecutor's comment in light of the fact that the prosecutor was aware that Schneider had volunteered to submit to a polygraph examination on two separate occasions. Schneider's attorney, Matthew D. Wilbur, submitted an uncontradicted affidavit in which he states:

> I was personally present on two occasions when the defense offered to allow Heath Schneider to be subjected to a polygraph examination. The first such occasion occurred in the U.S. Attorney's office in Sioux City, Iowa in the presence of [the prosecutor who prosecuted this case] and [the]FBI [case] [a]gent. [The prosecutor] indicated that [the government] was not interested in such an offer at that time. The second occasion occurred at the conclusion of the second day of trial. [The] FBI [case agent] stated "it's too late for that now" (or words to that effect) when this second offer was made.

Affidavit of Matthew D. Wilber in Support of Post–Trial Motions at ¶ 12. During the hearing on Schneider's post-trial motions, the prosecutor did not deny that Schneider had, in fact, offered to submit to two polygraph examinations. In failing to do so, the court is left with the impression that the prosecutor's rebuttal closing argument contained improper insinuations and assertions designed to mislead the jury or allude to facts not in evidence. *See Berger*, 295 U.S. at 85, 55 S.Ct. 629 (cautioning the government to abstain from arguments that are "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury"). Moreover, not only was the prosecutor's

comment contrary to what the prosecutor knew, *see United States v. Udechukwu*, 11 F.3d 1101, 1105–06 (1st Cir.1993) (prosecutor's insinuation that defendant fabricated story about drug source was reversible error because prosecutor knew drug source existed), but the prosecutor's comment undoubtedly suggested an inference of guilt. This is key because the prosecutor's remark was one of the last things that the jury heard from an attorney before they were sent home. *See United States v. Carter*, 236 F.3d 777, 788 (6th Cir.2001) (noting the significance of the timing of the prosecutor's improper comments which were made during the prosecutor's rebuttal argument and thus were the last words the jury heard before deliberations). Thus, when the prosecutor made the comment "what about the defendant's polygraph," the court concludes that, not only was the prosecutor's comment not an invited response or reply, but in light of the prosecutor's knowledge about Schneider's offer to submit to polygraph examinations, the prosecutor's comment crossed the line of permissible conduct. As the United States Supreme Court has made it abundantly clear, the United States Attorney is held to a higher standard of care:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. *But, while he may strike hard blows, he is not at liberty to strike foul ones.* It is

as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (emphasis added); see also United States v. O'Connell, 841 F.2d 1408, 1428 (8th Cir. 1988) ("the prosecutor's special duty as a government agent is not to convict, but to secure justice"). Here, the court concludes that the prosecutor's statement during the rebuttal closing argument was undoubtedly a "foul blow," and, highly improper.[7] This conclusion does not, however, end the inquiry.

### ii. Was Schneider prejudiced by the prosecutor's comment?

As stated previously, the Eighth Circuit Court of Appeals has set forth the following two-part test for reversible prosecutorial misconduct: 1) the prosecutor's remarks or conduct must have been improper; and 2) such remarks or conduct must have prejudicially affected defendant's substantial rights so as to deprive him of a fair trial. See United States v. Macklin, 104 F.3d 1046, 1049 (8th Cir. 1997). Having determined that the prosecutor's remark in the rebuttal closing argument regarding polygraph tests was improper, the court must determine whether that remark prejudicially affected Schneider's substantial rights so as to deprive him of a fair trial. This in turn requires the court to consider the following factors: 1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence of the defendant's guilt; and 3) any curative actions taken by the trial court. See United States v. Cannon, 88 F.3d 1495, 1502 (8th Cir.1996). The government argues that even if the statement regarding polygraphs is found to be improper and not a "fair response," this court's curative instruction avoided prejudice to the defendant. The court will address each factor in turn.

*The cumulative effect of the misconduct.* In this case, because the prosecutor's statement during the rebuttal closing argument was so egregious, suggestive, and inflammatory, the court concludes that it, alone, infected the entire trial. See United States v. Beeks, 224 F.3d 741, 746 (8th

7. Schneider also contends that the prosecutor made the comment with the intent to goad defense counsel into moving for a mistrial and also with the intent to prevent a likely acquittal. In fact, after the prosecutor made the comment, defense counsel moved for an intentional mistrial. The court is mindful that the Double Jeopardy Clause protects a defendant against governmental actions intended to provoke mistrial requests. See United States v. Ivory, 29 F.3d 1307, 1310 (8th Cir.1994) (stating that "a defendant may invoke the double jeopardy bar to prevent retrial if the first trial ended in a mistrial as a result of prosecutorial or judicial conduct intentionally designed to provoke the defendant's motion for a mistrial") (citing Oregon v. Kennedy, 456 U.S. 667, 673–76, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982)); see also United States v. Martin, 561 F.2d 135, 139 (8th Cir. 1977). Although the court finds that the prosecutor engaged in prosecutorial misconduct here, the court does not find that the prosecutor engaged in "prosecutorial overreaching." Martin, 561 F.2d at 139. This is so, because in order for Schneider to demonstrate "prosecutorial overreaching" and thus be protected by the Double Jeopardy Clause, Schneider must show that the prosecutor's misconduct was "motivated by bad faith or undertaken to harass or prejudice" the defendant. Id.; see also United States v. King, 590 F.2d 253, 256 (8th Cir.1978), cert. denied, 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979) (explaining that where "prosecutorial overreaching" is present the interests protected by the Double Jeopardy Clause outweigh society's interest in conducting a second trial ending in acquittal or conviction) (citations omitted). The court concludes that because there is no evidence that the prosecutor's conduct in this case was either "motivated by bad faith or undertaken to harass or prejudice" Schneider, Schneider's motion for intentional mistrial is denied.

Cir.2000) (stating that "a single misstep on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated") (quoting *United States v. Johnson,* 968 F.2d 768, 771 (8th Cir.1992)); *United States v. Carter,* 236 F.3d 777, 788–89 (6th Cir.2001) (stating that "even a single misstep on the part of the prosecutor may be so destructive of the right of the defendant to a fair trial that reversal must follow") (internal quotation and citation omitted). It must be remembered that the prosecutor's statement was the last words the jury heard from an attorney before deliberations. Consequently, in light of the prejudicial content of the statement, the time at which it was said to the jury, as well as the fact that is was an Assistant United States Attorney who made the statement, *see United States v. Solivan,* 937 F.2d 1146, 1150 (6th Cir.1991) (explaining that jurors are likely to "place great confidence in the faithful execution of the obligations of a prosecuting attorney, improper insinuations or suggestions [by the prosecutor] are apt to carry weight against a defendant"); *Young,* 470 U.S. at 18–19, 105 S.Ct. 1038 (the danger in such comments is that "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence"); *Berger,* 295 U.S. at 88, 55 S.Ct. 629 (explaining that a prosecutor's "improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none"), the court concludes that this statement, alone, weighs in favor of a new trial. *See United States v. Donato,* 99 F.3d 426, 432 (D.C.Cir.1996) (prosecutor's remarks in summation calling defendant a liar were reversible error where case turned on defendant's credibility).

■ Even assuming that the prosecutor's statement during the rebuttal closing argument, alone, does not weigh in favor of granting a new trial, the court finds that the cumulative nature of the prosecutorial impropriety which permeated this trial does weigh in favor of granting a new trial. It is noteworthy that the prosecutor's improper statement regarding the lack of the defendant's polygraph, as well as the lack of the defendant's witnesses' polygraphs, occurred after the prosecutor had been previously admonished by the court on three separate occasions regarding previous improper conduct. *See United States v. Crutchfield,* 26 F.3d 1098, 1101–02 (11th Cir.1994) (prosecutor's irrelevant questions insinuating that defense witness was involved in major drug operations and other misconduct were reversible error because prosecutor showed repeated disregard for trial court's rulings). The prosecutor's comment during the rebuttal closing argument, therefore, was not "an aberration in an otherwise fair trial." *See United States v. Evangelista,* 122 F.3d 112, 120 (2d Cir. 1997) (concluding that "the severity of the prosecutor's single improper statement was also mitigated somewhat in this case because the remark appears to have been an aberration in an otherwise fair proceeding") (internal quotations and citation omitted). Indeed, the first time the court admonished the prosecutor in this case occurred when, on the second day of trial, the prosecutor informed defense counsel that Heiden had admitted to committing perjury in front of the federal grand jury. The government failed to immediately inform defense counsel of this relevant information concerning its principal fact witness; it was revealed that the government knew about this information for approximately ten to fourteen days prior to trial, yet such information was not disclosed until the second day of trial. Schneider moved for a dismissal of the indictment based upon failure to disclose exculpatory information and for outrageous govern-

ment conduct. When pressed for its delay in relaying this information to the defense, the prosecutor indicated that it was an oversight while preparing for trial and that it was not intentional. Because the court determined that there was no *Brady*[8] violation, the court denied defendant's motion.

The prosecutor was admonished a second time on the third day of trial when Toni Marquardt testified on behalf of the government. During the beginning of the prosecutor's direct examination of Toni Marquardt, the prosecutor asked whether there was any reason for Marquardt's nervous disposition on the witness stand. Marquardt proceeded to state that Schneider's sister's boyfriend, Brian Truitt, had tried to run her off the road that morning on the way to court and had flipped her off. Schneider's attorney objected and moved for dismissal of the case due to the failure to disclose the irrelevant and extremely prejudicial piece of information prior to having Marquardt disclose it in the presence of the jury. The court denied the motion, but instructed the jury to disregard the comment as it was irrelevant to any issue in the trial. The court also questioned the prosecutor about not bringing this information to the court's attention before delving into it in front of the jury. The prosecutor explained that no thought regarding the matter was given prior to asking Marquardt the question, and characterized such conduct as being "lame."

The third time the court admonished the prosecutor occurred when the FBI case agent testified that he had been aware, through discussions with Gail Swanson, of a couple of trips to Mexico by Heiden and Swanson during which drugs had been purchased. Because this information was not contained in the FBI–302's of Gail Swanson, Schneider had no way of knowing about these trips until it came out on the witness stand. This information was important to the defense, because, as pointed out by Schneider in his post-trial brief, "the crux of the Government's case against Heath Schneider was that Heath was the one and only supplier of drugs for Heiden during the time period alleged in the indictment, except for a couple of small purchases from an individual named Ralph Gonzalez. Failure to disclose several trips to Mexico by William Heiden, two of which were in the company of Gail Swanson, wherein drugs were purchased, could certainly have affected the outcome of trial of this matter. Had the defense been made aware of these trips prior to trial, investigation regarding other trips by Heiden to drug source areas could have been undertaken." *See* Defendant's Brief in Support of Post–Trial Motions at 11. Defense counsel moved to dismiss the indictment based upon outrageous government conduct and the withholding of exculpatory information. The court denied this motion.

In light of the foregoing three instances of the prosecutor's improper conduct in this trial, particularly the line of questioning that elicited the prejudicial testimony by Toni Marquardt, which will be discussed in further detail below, the court concludes that the cumulative effect of the prosecutor's misconduct undoubtedly weighs in favor of Schneider receiving a

---

**8.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Eighth Circuit Court of Appeals has explained that *Brady* is not violated by a delay in disclosing evidence so long as the evidence is disclosed during trial. *See United States v. Gonzales,* 90 F.3d 1363, 1368 (8th Cir.1996); *see also United States v. Boykin,* 986 F.2d 270, 276 n. 6 (8th Cir.) *cert. denied,* 510 U.S. 888, 114 S.Ct. 241, 126 L.Ed.2d 195 (1993). Because the government did disclose the information relating to Heiden's perjured testimony during the trial, this court ruled that there was no *Brady* violation.

new trial. *See Young,* 470 U.S. at 11, 105 S.Ct. 1038 (stating that the determination of whether a prosecutor's behavior constituted prejudicial error must be made in the context of the whole trial). This court is mindful that prosecutors are to be zealous advocates, however, prosecutors are also held to a higher standard since their paramount duty in every case is to seek justice, win or lose. *See Berger,* 295 U.S. at 88, 55 S.Ct. 629 ("The United States is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). The Sixth Circuit Court of Appeals recognized the difficult role prosecutors play in criminal prosecutions, explaining:

> The determination of whether a prosecutor's behavior constituted prejudicial error must be made in the context of the whole trial. *Young,* 470 U.S. at 11, 105 S.Ct. 1038, 84 L.Ed.2d 1. This must be done because the line between vigorous advocacy and the denial of a fair trial is a fine line. Prosecutors face the difficult task of walking this fine line while playing a dichotomy of roles. They must be zealous advocates and enforcers of the law while, at the same time, acting in a manner that ensures a fair and just trial. *See United States v. Reliford,* 58 F.3d 247, 251 (6th Cir.1995).

*United States v. Francis,* 170 F.3d 546, 552–53 (6th Cir.1999). Here, the prosecutor repeatedly failed in a prosecutor's duty to "refrain from improper methods," *see Berger,* 295 U.S. at 88, 55 S.Ct. 629 ("It is as much his [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."), and when these incidents of prosecutorial impropriety are viewed together, the court concludes that they are so prejudicial that the cumulative effect of the misconduct weighs in favor of granting a new trial. *See United States v. Cruz–Padilla,* 227 F.3d 1064, 1069 n. 8 (8th Cir.2000) ("If a prosecutor's remarks are so prejudicial that they deny the defendant a fair trial, then those remarks must, *ipso facto,* affect a substantial right of the defendant to a fair trial") (citing *United States v. Freisinger,* 937 F.2d 383, 387 (8th Cir.1991)).

*The strength of the properly admitted evidence.* The second factor considered when assessing the prejudicial impact of the prosecutor's comment is the strength of the evidence against Schneider. The court concludes that, while there was sufficient evidence presented at trial to support the jury's guilty verdict, this evidence was not so strong as to overcome the improper comment made by the prosecutor, especially in light of the other instances of imprudent conduct by the prosecutor. The government's case against Schneider relied exclusively on testimony from co-conspirators of questionable credibility who never directly observed Schneider deliver any drugs to Heiden. Heiden was the only witness that provided direct evidence of Schneider's involvement in the drug conspiracy, and significantly Heiden admitted to committing perjury before the federal grand jury in this case.

While the prosecution's case was strong, yet not overwhelming, it was met virtually blow by blow with a strong and zealous defense. The defendant testified at length, was a strong and forceful witness, and was barely cross-examined by the government. Also, this court was very impressed with defense counsel's closing argument, finding it to be the most effective closing argument that the undersigned has ever seen either as a practicing attorney, a magistrate judge and now a district court judge. Schneider's attorney effectively at-

tacked every shred of evidence upon which the government relied, presenting it in an entirely different light than the government. Therefore, although the evidence against Schneider was considerable, it was not overwhelming, and coupled with a very strong defense and defense counsel's forceful closing argument, the court concludes that Schneider has satisfied this second factor. *See Boyle v. Million,* 201 F.3d 711, 717–18 (6th Cir.2000) (reversing for prosecutorial misconduct even though the evidence against the defendant was strong); *United States v. Francis,* 170 F.3d 546, 552 (6th Cir.1999) (same).

*The curative actions taken by the trial court.* The court issued the following "Supplemental Instruction" in response to the government's improper statement:

During the government's rebuttal closing argument, Assistant United States Attorney [ ] suggested that the defense could have used polygraph tests for the defense witnesses. This was highly improper and legally wrong, for the following reasons: First, because of the presumption of innocence, Mr. Schneider has no burden to prove his innocence, for the law never imposes upon a defendant in a criminal case the burden of duty of producing any evidence; second, the results of polygraph tests are not admissible in federal court, under ordinary circumstances.

However, defense counsel's reference to polygraph tests of the government witnesses was proper. This is so, because the plea agreements those witnesses signed gave the United States Attorney's Office and the FBI the right to obtain such tests. Therefore, the situation of the government witnesses is completely different from that of defense witnesses, because the defense

never has plea agreements with its witnesses.

Because [the prosecutor's] remark was highly improper, you are instructed to completely disregard it.

*See* Docket # 159. Although this curative instruction was issued to the jury, *sua sponte,* the court recognizes that it was not given until nearly two days after the jury heard the prosecutor's improper comment. This is so, because the closing arguments and rebuttal argument took place on Saturday [9], and the curative instruction was not given until that following Monday morning when the jury returned to the courthouse to deliberate. Thus, the prosecutor's improper comment remained with the jurors, without the curative instruction, for a significant period of time. Moreover, although the court recognizes that curative instructions are looked upon favorably by the appellate courts in curing prosecutorial misconduct that occurs during trial, *see United States v. True,* 179 F.3d 1087, 1090 (8th Cir.1999) (prosecutor's comment regarding defendant's failure to subpoena potential witness, when defendant had in fact done so but witness failed to testify, did not prejudice defendant because comment was made in rebuttal to defense counsel's argument and the court offered cautionary instruction that addressed the improper comment); *United States v. Shareef,* 190 F.3d 71, 78 (2d. Cir.1999) (any misconduct committed by prosecutor did not prejudice the defendant or warrant a new trial given, *inter alia,* the trial court's prompt admonishments), and that jurors are presumed to follow the court's instructions, *see Jones v. United States,* 527 U.S. 373, 393, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (stating that the jurors are presumed to have followed the district court's instructions) (citations omitted);

---

9. In order to accommodate this court's trial calendar, it was decided that the closing argument portion of the trial would be held on Saturday.

*see also United States v. Paul,* 217 F.3d 989, 997 (8th Cir.2000) (stating jury is presumed to follow all instructions) (citing *Jones* ), this court has grave reservations, given the circumstances in this case, that the curative instruction dispelled the undue prejudice that stemmed from the prosecutor's improper remark, particularly because the prosecutor's comment clearly misled the jury. *See Boyle v. Million,* 201 F.3d 711, 717–18 (6th Cir.2000) (prosecutor's repeated incidents of misconduct were reversible error warranting *habeas corpus* relief because, despite relatively strong evidence against defendant, statements were obviously intended to mislead the jury and prejudice defendant, and improprieties infected all aspects of trial). Schneider testified for essentially an entire day on direct examination, however, when it came time for the prosecutor to cross-examine him, the prosecutor only asked a few innocuous questions. At no time did the prosecutor attempt to impeach Schneider or vigorously cross-examine him while he was on the witness stand. Yet in the rebuttal closing argument, the prosecutor obtained the same effect of impeachment by commenting on the defendant's failure to take a polygraph. Indeed, in a rather perverse way, the prosecutor's improper comment could well have bolstered a belief in the jurors that the prosecutor did not vigorously cross-examine Schneider because the prosecutor knew he was lying and his failure to take a polygraph was the "proof in the pudding." Had the prosecutor vigorously cross-examined Schneider, the court is of the opinion that the prosecutor's comment would not have been as prejudicial as the court considers it to be absent any vigorous cross-examination, because the jury would have been in a position to weigh Schneider's testimony and assess his credibility against the prosecutor's comment regarding Schneider's failure to take a polygraph examination. However, because the prosecutor's comment was made absent any vigorous cross-examination, the court concludes that the prejudice that resulted cannot be overcome even taking into account the practical application of the curative instruction this court issued to the jury. As this court noted to the parties, and highlighted by Schneider in his brief, telling the jury not to think about the white elephant in the courtroom does nothing but make sure that every juror is thinking about the white elephant. Consequently, the court finds that, individually, the prosecutor's statement about the defendant's failure to take a polygraph test, as well as the statement about the defendant's witnesses' failure to take a polygraph test, made during the rebuttal closing argument was so improper and prejudicial that it deprived Schneider of a fair trial. The court also concludes that the prosecutor's statement during the rebuttal closing argument, coupled with the other three instances of prosecutorial improprieties that permeated this trial, especially the questioning of Toni Marquardt, also deprived Schneider of a fair trial. Consequently, the court concludes that Schneider is entitled to a new trial. *See United States v. Longie,* 984 F.2d 955, 960 (8th Cir.1993) (explaining that the trial judge, not an appellate court examining a cold record, could best weigh possible errors against whole record to determine whether a new trial is warranted).

#### b. *Marquardt's testimony*

In its brief, the government argues that Marquardt's testimony was merely offered as an explanation of her shaky demeanor on the witness stand. The government further contends that there was no implication or suggestion in this case that Schneider was involved or responsible for the incident involving Marquardt, and it was not an improper or egregious attack on the defendant's character or credibility.

The court strongly disagrees with the government. This is so, because the sole purpose for eliciting such testimony from Marquardt directly suggested that the defendant was involved with the intimidation of a witness. Why else would the defendant's sister's boyfriend attempt to run Marquardt off the road on the day she is scheduled to testify against Schneider? Upon hearing Marquardt's testimony, that point was crystalized for the jury, and for the government to argue otherwise rings hollow with this court. If the prosecutor only wanted to explain Marquardt's nervous demeanor to the jury, there are myriad ways in which the prosecutor could have helped Marquardt convey to the jury that she was nervous without implicating the defendant or his family. For example, the prosecutor could have directed Marquardt to state generally that she was almost in an accident while on the way to testify that morning, or that some person, without naming names, "flipped her off" and almost ran her off the road, etc. In fact, in reviewing the Realtime transcript, although Marquardt did testify that the individual who attempted to run her off the road was Brian Truitt, it was the prosecutor's next question asking "[w]ho is he?" that the jury became aware of his familial ties to Schneider.[10] The court finds that in light of this question there is no doubt that the prosecutor desired to inform the jury that it was someone with close ties to Schneider who attempted to run Marquardt off the road. The court notes that even before the prosecutor began this line of inquiry, Marquardt had testified that she suffered from anxiety and, as a result, took several forms of medication. Marquardt's anxiety alone could have accounted for her nervous demeanor while on the witness stand, thus obviating the need to even talk about the incident while driving to court. Moreover, this type of a "Perry Mason" moment, replete with the elements of surprise and prejudice, is precisely the type of matter that should be taken up with the court outside the presence of the jury. Indeed, this court requires the attorneys to meet one-half hour before the trial begins to go over matters such as this that arise during a trial.

Undaunted, the government attempts to distinguish those line of Eighth Circuit cases that hold for the proposition that improper questioning of a witness may warrant a new trial. Specifically, in *United States v. Beeks*, 224 F.3d 741 (8th Cir. 2000), the government attempts to distinguish that case from this case, because the line of questioning in *Beeks* directly attacked the credibility of a non-testifying defendant. In contrast, the government asserts that based on Marquardt's testimony there was no implication or suggestion that Schneider was involved or responsible for the incident involving Marquardt, and further that her testimony was not an improper attack on Schneider's character or credibility. The government also distinguishes this case from *United States v. Monteleone*, 77 F.3d 1086 (8th Cir.1996) on the basis that the questioning in *Monteleone* focused directly on the defendant's credibility and character, which the government contends was not the case here.

---

10. After Toni Marquardt testified that she was nearly run off the road and flipped off on her way to court that morning by some individual, the prosecutor asked the following deliberate questions:

Q. Who was driving that vehicle or who was in that vehicle?
A. Brian Truitt
Q. Who is he?
A. He is the defendant's sister's boyfriend. From this deliberate line of inquiry, the court finds that the federal prosecutor clearly wanted the jury to know not only the reason why Marquardt seemed nervous, but also who was responsible for running her off the road.

The court, however, disagrees. Although Marquardt did not directly attack Schneider's character or credibility, her testimony undoubtedly put Schneider in a far different, and worse light than he had been prior to her testimony. At a minimum, her testimony suggested that Schneider's family members wanted to intimidate Marquardt from testifying because of Schneider's guilt, and at a maximum, her testimony suggested that Schneider recruited a family member to intimidate Marquardt from testifying. Either way the prosecutor's question, which elicited Marquardt's response, was improper and prejudicial. While the court is dumbfounded as to why a seasoned prosecutor would elicit such testimony that is so patently irrelevant and prejudicial, especially without informing the court of such a matter beforehand, this incident, alone, is not sufficient to warrant a new trial. However, this incident, coupled with the other instances of the prosecutor's improprieties that occurred during the trial, require the court to act affirmatively in order to prevent prosecutors from employing similar improper tactics with impunity. As Judge Jerome Frank explained:

> This court has several times used vigorous language in denouncing government counsel for such conduct as that of the [prosecutor] here. But, each time, it has said that, nevertheless, it would not reverse. Such an attitude of helpless piety is, I think, undesirable. It means actual condonation of counsel's alleged offense, coupled with verbal disapprobation. If we continue to do nothing practical to prevent such conduct, we should cease to disapprove it. For otherwise it will be as if we declared in effect, 'Government attorneys, without fear of reversal, may say just about what they please in addressing juries, for our rules on the subject are pretend-rules. If prosecutors win verdicts as a result of "disapproved" remarks, we will not deprive them of their victories; we will merely go through the form of expressing displeasure. The deprecatory words we use in our opinions on such occasions are purely ceremonial.' Government counsel, employing such tactics, are the kind who, eager to win victories, will gladly pay the small price of a ritualistic verbal spanking. The practice of this court—recalling the bitter tear shed by the Walrus as he ate the oysters—breeds a deplorably cynical attitude towards the judiciary.

*United States v. Antonelli Fireworks Co.,* 155 F.2d 631, 661 (2d. Cir.) (Frank J., dissenting), *cert. denied,* 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640, (1946) (footnote omitted). As explained in the foregoing, the court concludes that the prosecutorial misconduct that permeated this trial demands more than the "ritualistic verbal spanking."

### 3. Weight of the evidence

Because the court has granted Schneider a new trial based on prosecutorial misconduct, the court need not and will not engage in a weight of the evidence analysis here.

## III. CONCLUSION

The court concludes that based upon its review of the evidence, and viewing the evidence in the light most favorable to the government, a reasonable jury could have found Schneider knowingly and voluntarily participated in an agreement to combine, conspire, and agree with other persons to commit the following two separate offenses: (1) distribution of a mixture or substance containing a detectable amount of methamphetamine; and (2) distribution of a mixture or substance containing a detectable amount of cocaine. Consequently, the court **denies** Schneider's motion for judgment of acquittal. However, the court concludes that the statement

made by the prosecutor during the rebuttal closing argument, alone, as well as the cumulative effect of the other three instances of imprudent conduct on the part of the prosecutor, so infected the trial with unfairness as to make the resulting conviction a denial of due process. Consequently, the verdict in this case is set aside and Schneider's motion for new trial **is granted.**

**IT IS SO ORDERED.**